ALEX. H. HOWARD *vs.* JULIA KIMBALL, executrix.

Kennebec, 1874.—January 8, 1876.

*Amendment. Trial. Exceptions. Evidence. Auditor. Judgment.*

Where the plaintiff has in his writ a count for money had and received with specification, *inter alia*, of "the amount of money which the said K. (the defendant's testator) was owing one P., the same having been transferred by the said P. to the plaintiff, and for which the said K. agreed to account to the plaintiff as creditor to said P," the introduction by way of amendment of counts upon an order drawn by P. upon K. for "any balance there may be in your hands on settlement of my account with you," in favor of the plaintiff, and accepted by K., is not objectionable as introducing a new cause of action. It is but a more particular and circumstantial setting out of a cause originally alleged.

When such order was made payable "to the order of A. H. H., cashier," and indorsed by A. H. H., cashier, to himself, and sued in his own name to be recovered to his own use, and it was proved that he was at the time cashier of the A. bank; yet inasmuch as the evidence negatived the idea that the A. bank ever had any interest in the order, and showed that it was originally made and delivered to the plaintiff to secure P.'s indebtedness to him personally, and the jury would not have been authorized to come to any other conclusion on the evidence before them; *held*, that instructions "that the order" might "be regarded as negotiable, and the word 'cashier' as *descriptio personæ*, and the indorsement as sufficient, with K.'s acceptance and assent to transfer to the plaintiff P.'s interest in the accounts without proof of special authority from the bank to the plaintiff to make the indorsement," whether technically correct or not, did no wrong to the defendant, and that exceptions to the admission of the order as evidence, and to these instructions respecting its character and effect could not be sustained; *held*, further, that the testimony given by the president and one of the receivers of the A. bank, was competent upon the question whether the bank ever had any interest in the order.

The case had been before an auditor, who returned his minutes of the testimony taken before him as part of his report. The plaintiff offered the report in evidence. The defendant objected on the ground that it was irregular to make the evidence of the witnesses before the auditor a part of the report. The presiding judge admitted the report, except that portion which contained the documents and evidence laid before the auditor. *Held*, that the defendant had no ground of exception to such admission, nor to instructions that "the auditor's report was *prima facie* evidence of the amount which the plaintiff was entitled to recover, that it was competent for the defendant to disprove it, but it must stand unless he had impeached it."

A former judgment will not be a bar to further litigation unless the same vital point was put directly in issue and determined. That was not the case in the equity suit between these parties. The question there settled was as to

the plaintiff's right to redeem the half of the ship and to an account of her earnings. *Held,* that the decision was not conclusive against his rights to the sum due from Kimball to Page, under the assignment and acceptance. The defendant's motion to stay proceedings until payment of costs in the equity suit was rightly overruled. The case is not within the provisions of R. S., c. 82, § 111.

ON EXCEPTIONS AND MOTION, argued May term, 1871, and re-argued May term, 1874.

ASSUMPSIT, to recover the amount formerly due from Nathaniel Kimball, the defendant's testator, to Rufus K. Page and by Page assigned to the plaintiff.

Prior to July, 1856, Page had extensive dealings with Kimball, arising from owning shipping together, Kimball being the managing owner and keeping the accounts. In December, 1855, their accounts being unsettled, Page, to raise money for his business as a merchant, obtained notes from Kimball of some $15,000, and transferred to Kimball, by a bill of sale, absolute in form, one-half of the ship "Ocean Steed," which they had hitherto owned in common.

Page afterwards transferred the balance due him from Kimball, to the plaintiff Howard by an order in writing of the tenor following:

HALLOWELL, July 23, 1856.

Value received, pay to the order of A. H. Howard, cashier, any balance there may be in your hands on settlement of my account with you, and oblige your ob't serv't,

(Signed,)     RUFUS K. PAGE.

To Capt. Nath'l Kimball, Boston, Mass.   (Indorsed.) Pay A. H. Howard or order.   A. H. Howard, cashier.   Accepted, Nathaniel Kimball."

October 5, 1857, Page, having failed in business, assigned a scheduled list of his property and "any and all other demands, claims or property in which" the said Page had "any interest, whether herein specially named or not," to Charles Danforth and Calvin Spaulding, for the benefit of creditors.

In October, 1862, Kimball died, leaving his account with Page unsettled. This plaintiff failed to procure an adjustment with the defendant executrix, and uncertain what the nature of the deal-

ings in the transfer of the "Ocean Steed" was, commenced two suits, one in equity against her, joining Page as a party defendant, and the other, this suit, at law against her alone.

The equity suit, in which the plaintiff claimed that the "Ocean Steed" was transferred to Kimball as collateral security and in trust, and prayed for an account, was dismissed with costs for the defendant.

The writ in this case, the suit at law, is dated July 23, 1863. It contained when made three counts.

The first count, on an account annexed, the last item in which is for the amount of the indebtedness of the defendant's testator to R. K. Page, transferred to the plaintiff, and which Kimball, the testator, agreed to account with the plaintiff for, is for $10,000.

The second count is for the price or value of one-half of the ship "Ocean Steed," alleged to have been sold by plaintiff to the testator, $10,000.

The third count is for $32,000, money alleged to have been had and received by the testator in his life-time, to wit, on the first of November, 1862.

Under this count is a specification of the claims relied on; the last of which is the amount of money which the said Nathaniel Kimball was owing one Rufus K. Page; the same having been transferred by the said Page to the plaintiff, and for which the said Nathaniel Kimball agreed to account to the plaintiff as creditor of the said Page.

At the August term, 1866, the plaintiff had leave to amend by adding the fourth and fifth counts.

The fourth count alleges that said Page, on the 23d of July, 1856, drew his order on said Kimball, requesting him to pay to the order of said Howard, "cashier," any balance that might be in his (Kimball's) hands, on settlement of his (the said Kimball's) accounts with him, for value received; that the order was indorsed by Howard, cashier, to the plaintiff and accepted by Kimball; and that the balance due was $15,000.

The fifth count is similar to the fourth count, excepting it is described as an order made payable to the order of the plaintiff, and there is no allegation of its having been indorsed.

At the time when the amendment was allowed, exceptions were filed; and at the trial, March term, 1871, the defendant's counsel again objected to the third and fourth counts and to the introduction of the order under them, as introducing a new cause of action ; but his objection was overruled.

The defendant pleaded the general issue; and also by brief statement the statute of limitations (afterwards waived); and also the suit in equity and the proceedings and judgment thereon.

The general issue was joined by the plaintiff, and by counter-brief statement he made answer to the defendant's brief statement.

At the trial the plaintiff offered in evidence the report of the auditor, which found a balance due from Kimball to Page as of July 3, 1856, $9776.79, made up of the following items :

| | |
|---|---:|
| 1. Accountable receipt of July 12, 1855, as per exhibit marked (C.), | $4290.00 |
| Interest from March 8, 1855, | 353.92 |
| 2. Proceeds of sale of one-sixteenth of ship "Lion" to Capt. Ryan, August 10, 1855, | 2484.69 |
| Interest from August 10, 1855, | 153.22 |
| 3. Three-sixteenths bark "Savannah," July 22, 1856, | 1500.00 |
| Interest, | .25 |
| 4. Note given by Kimball to Page, given up by Page, and interest, | 994.71 |
| | $9776.79 |

The report further found :

| | |
|---|---:|
| 5. Seven-sixteenths primage on $656.25 is also allowed, and interest thereon, on Ryan's deposition, (exhibit D., now lost,) letter of Kimball to Howard, inclosing account, in which Kimball credits Howard therewith; also exhibits 7 and 8, and private account between Ryan and Kimball, in which this item is not charged as paid over to Ryan.   Interest on same, $235.46, | 891.71 |
| | $10,668.50 |

The report, after tabulating the several items allowed and disallowed in the plaintiff's bill of particulars, closed as follows : "I herewith submit the paper evidence and exhibits and minutes of testimony taken before me, as part of my report. (Signed,) Samuel Titcomb, auditor."

The admission of the auditor's report was objected to by the defendant; but it was admitted by the court, except that portion which makes the accompanying document and evidence a part of the report.

The defendant's counsel objected to the document and evidence accompanying the report; and that objection having been sustained, he objected to the remainder—the report itself,—on the ground that it could not be received without the accompanying evidence, as that was attached to the report; and because the auditor had no power to report the evidence.

The plaintiff offered in evidence the order of July 23, 1856, signed by N. Kimball, which was objected to under the fourth count on the ground that it was not negotiable, but if it was negotiable, then Howard, as cashier of the bank, had no authority to indorse and negotiate it to himself in his private capacity without being authorized so to do by the bank. The court ruled for the purpose of the trial that the order was negotiable, and that Howard had authority to indorse and negotiate it, and admitted it, the word "cashier" being *descriptio personæ.*

The plaintiff objected to the deposition of Page on the ground that it was not competent by parol to explain or affect the order.

The plaintiff called H. K. Baker, one of the receivers of the American Bank, who testified that the books of the bank came into the hands of the receivers in the last of September, 1865. He produced the journal and ledger, and exhibited certain entries thereon of transactions with Page, and testified, subject to the defendant's objection, that no notes signed by R. K. Page had come into his hands dated anterior to July 23, 1856; and that he found no entry on the books of any other note than the one he had stated, given by said Page.

Calvin Spaulding, plaintiff's witness, testified that he was the president of the American Bank in 1856; was not familiar with the books; that A. H. Howard kept them; that they ought to show the indebtedness of parties to the bank; and further testified, subject to defendant's objection, that he was not aware of any indebtedness of any description from Page to the bank that had not been paid.

The defendant's counsel contended that the judgment in the bill in equity, *Howard* v. *Kimball,* aforesaid, was a bar to all of plaintiff's claims in this action, except the first and second items in the auditor's account. But if not so, then plaintiff was not entitled

to recover, because the order of July 23, 1856, aforesaid, was not negotiable; that the order when first given was given to the American Bank, or to Howard as cashier, as security for Page's liabilities to the bank, and held by the bank for that purpose; that Howard, as such cashier, had no authority to indorse and to negotiate the order to himself; that, if the liabilities of Page to the bank were paid after the order was given, the bank no longer had any authority to hold it, or to negotiate it to Howard; that there was nothing due from Kimball to Page on the 23d of July, 1856; that when Kimball loaned Page the $15,000 in notes on which to raise money, it was specially agreed that they should be payment of and offset against the balance then due from Kimball to Page, at the time the notes were given, April 17, 1856, and that all the bank or Howard could take by the order would be the balance, if any, after allowing Kimball the $15,000 for his notes, and that, settling their accounts in that way, the balance was in Kimball's favor at the time the order was given.

He also contended that the auditor's report was only evidence for the consideration of the jury, to be considered the same as other evidence; that it was evidence only in regard to the items of account on which the auditor passed, as appeared by his report; that it was not evidence on the point of the agreement to offset the $15,000 in payment of Kimball's indebtedness to Page.

On these points the presiding judge instructed the jury that the plaintiff must recover, if he was entitled to recover at all, by virtue of the order of July 23, 1856, except as to the first and second items; that the judgment in the equity suit was no bar to this suit or any portion of it covered by the order; that the plaintiff Howard had authority to negotiate and indorse the order to himself, and, for the purpose of this trial, was to be regarded as the lawful holder of it.

The court was requested to, and did instruct the jury, if they are satisfied from the evidence that Mr. Kimball loaned his notes for $15,000 to Rufus K. Page, December 17, 1855, or April 17, 1856, and Kimball was to pay the notes, with an agreement that the amount due from Kimball to Page should be offset

against the $15,000, and Page should be the debtor of Kimball for the balance, for which Kimball should hold half of the "Ocean Steed," then this order of July 23, 1856, would not assign anything to the plaintiff, unless the balance of the account due from Kimball to Page at the time the notes were given exceeded the amount of said notes. He also instructed them that, if Mr. Howard first became the holder, in his individual capacity, of the order dated July 23, 1856, on or about November 1, 1859, then the whole interest in the balance of account due from Kimball to Page at the date of that order, passed to Danforth and Spaulding under the assignment of Mr. Page, dated October 5, 1857, and the plaintiff took nothing by the order and cannot maintain this action; that the auditor's report was *prima facie* evidence of the amount which the plaintiff was entitled to recover; that it was competent for the defendant to disprove it, but it must stand unless he had impeached it.

Appropriate instructions were given as to the rule in regard to interest; that interest should be computed from the date of the writ only and not as allowed by the auditor.

To the foregoing rulings and instructions to the jury, except the instructions requested, the defendant excepted, and also moved to have the verdict, which was for the plaintiff for $14,466.63, set aside as against law and evidence.

*A. Libbey*, for the defendant, at the July term, 1871.

I. The amendment by adding the fourth and fifth counts introduced a new cause of action. The ruling of the presiding justice in his charge, that if the plaintiff could recover at all, it must be by virtue of the order, illustrates it. *Newall* v. *Hussey*, 18 Maine, 249. *Vancleef* v. *Therasson*, 3 Pick., 12, and cases cited in note to 3d edition by Perkins.

II. The order was not admissible under the fourth count because of variance. That count describes the order drawn in favor of Howard, and not as cashier. It was not admissible without some evidence that Howard as cashier was authorized by the bank to indorse it to himself. Page was indebted to the bank on his own paper and that of Reed & Page. The "Ocean Steed" notes were

pledged to the bank as collateral to his indebtedness about the time the order was given. Howard treated it as given to him as cashier of the bank by indorsing it in that capacity. The presiding judge erred in ruling as matter of law that the order was given to Howard in his private capacity, the title "cashier" being mere *descriptio personæ*.

The most favorable ruling for the plaintiff which the law would authorize, was to submit the question to the jury to find as a matter of fact whether the order was given to plaintiff or the bank. *Bank of Newbury* v. *Baldwin*, 1 Clifford, 519. *Mechanics' Bank* v. *Bank of Columbia*, 5 Wheat., 326. *Commercial Bank* v. *French*, 21 Pick., 486. *Baldwin*, in error, v. *Bank of Newbury*, 1 Wallace, 234.

If the order was originally given to the bank, then the cashier could not, without special authority, indorse it and transfer the title to himself.

But if so, the order is not a negotiable order. It is not for a sum certain, nor is it payable on a fixed period of time. Story on Prom. Notes, 22, 20. *Dodge* v. *Emerson et al.*, 34 Maine, 96.

III. The auditor's report should not have been admitted. All the evidence put in by plaintiff before the auditor, including the evidence of the witnesses, was made a part of his report. Such a report is irregular, and is not evidence under the statute. But if admitted at all, it should have been admitted as submitted by the auditor. The court had no power to admit a part and reject a part; and if admitted at all, the evidence reported should have been admitted with it, as we had a right to impeach the report by showing that the conclusions of the auditor were not warranted by the evidence before him.

But if admissible the presiding judge erred in his instruction to the jury as to its legal effect as evidence. The duty of the auditor is to state the accounts between the parties and report such items as he finds properly vouched. It is no part of his duty to determine whether any item or items are a legal offset, nor to determine an issue of fact controverted by the parties, or what the contract between them really was. One issue of fact raised in this case was whether the $15,000 in notes loaned Page by

Kimball was to be offset against and go as payment of the balance, if any due, from Kimball to Page. Another issue of fact presented was whether the order was held by Howard prior to Page's assignment, October 5, 1857.

The instruction of the court to the jury as to the legal effect of the report made it evidence against the defendant on both of these issues, and conclusive unless the defendant impeached it. The jury must have so understood it, and regarded it as conclusive, because the evidence from Page, and Howard in his bill and supplemental bill in the equity suit, is full and explicit on the first question. The instruction had the effect to change the burden of proof from the plaintiff to the defendant, when the statute makes the report evidence only, without changing the burden of proof, so that if the defendant's evidence is sufficient to balance the force of the report, the plaintiff would fail.

IV. The questions put to H. K. Baker, "have any notes signed by R. K. Page come into your hands, dated anterior to July 23, 1856 ?" and "have you found an entry on the books of any other note than the one you have stated, given by said Page ?" were inadmissible. The answers were calculated to mislead the jury. The question recited in the exception, put to Spaulding, and the answer, were not legally admissible.

V. The judgment in the bill in equity, *Howard* v. *Kimball*, ex'rx, is a bar to all of this suit embraced in the account *Page* v. *Kimball*, as it stood at the time of the loan of the $15,000 in notes, and the conveyance of the "Ocean Steed" as collateral. After that transaction all the balance of account due from Kimball to Page, except the excess over and above the $15,000, if any, entered into the "Ocean Steed" transaction, and was afterwards to be applied towards the payment of the debt for which the "Ocean Steed" was pledged and for the redemption of the ship. Whoever took a conveyance from Page of his equitable interest in the ship, had a right to have the balance of account applied that way, and for the redemption of the ship. Danforth and Spaulding have a right to settle the affairs of the "Ocean Steed" on that basis, and the case finds that they claim that right. The order in suit was filed as evidence in that suit. This court having jurisdiction of the orig-

inal bill, as a bill for an account, and for the redemption of the "Ocean Steed," held in trust and pledge by Kimball ; after the loss of the ship the court still had jurisdiction under the supplemental bill to decree an account and payment of the balance due from Kimball's estate, if any, in money.    The whole subject matter was before the court on the merits, and that judgment is a bar to a suit at law for the same cause.    It clearly is a bar unless the balance of account at time the notes were given exceeded the amount of the notes, and that is not pretended.  *Smith* v. *Kernochan*, 7 Howard, 198.  *Hopkins* v. *Lee*, 6 Wheat., 109.

*J. S. Abbot*, for the plaintiff, at the July term, 1874.

I. The defendant's counsel claimed in his brief in 1871, that "the court had no power to admit a part and reject a part; that if admitted at all the evidence reported should have been admitted with it, as we had the right to impeach the report by showing that the conclusions of the auditor were not warranted by the evidence before him."

This right was never opposed. by plaintiff's counsel, or ruled against by the court.    The ruling of the court was that the plaintiff could not introduce the auditor's report of the evidence before him in support of his report, against the objection of defendant's counsel.

This ruling of the presiding judge was correct on principle and on authority.  *Jones* v. *Stevens*, 5 Metc., 373.

II. The instruction given by the presiding judge as to the effect to be given to the auditor's report, is correct.  *Allen* v. *Hawks*, 11 Pick., 359.  *Lazarus* v. *Commonwealth Ins. Co.*, 19 Pick., 81.  *Clark*, adm'x, v. *Fletcher*, 1 Allen, 53.  *Kendall* v. *Weaver*, 1 Allen, 277.  *Gould* v. *Norfolk Lead Co.*, 9 Cush., 338.

III. The defendant objected to the introduction of the order of July 23, 1856, signed by N. Kimball, and to the ruling of the judge in regard to it.

It is claimed that the instructions were legally correct; but if not strictly and verbally accurate, the verdict should not be set aside, provided the same results would certainly follow if the instructions had been strictly and verbally correct.

In this branch of the case the question is whether the balance

due from Kimball to Page was so transferred. that it can be legally collected by the plaintiff. Page drew his order on Kimball, requesting him to pay such balance "to the order of A. H. Howard, cashier." This order was accepted by Kimball, and was indorsed on the back, "Pay A. H. Howard or order. A. H. Howard, cashier."

It is of no importance whether the order is negotiable or not; and of no importance whether the word "cashier" is *descriptio personæ* or not. Kimball, by his acceptance of the order, promised to pay that balance to the order of "A. H. Howard, cashier." A promise to pay to the order of A. B. is in legal effect the same as a promise to pay A. B. or order; and upon such promise an action is maintainable in the name of A. B. without any prior indorsement by A. B.

There was no necessity for the indorsement by Howard. Under the fifth count, or even under the first or third count, this action can be maintained without such indorsement, and the money collected will belong to Howard, if the word "cashier" is descriptive only. But if the word "cashier" is not descriptive, still the action is maintainable and the plaintiff in such case would hold the funds in trust for the bank. *Fairfield* v. *Adams,* 16 Pick., 381. *Gould* v. *Norfolk Lead Co., supra,* p. 345. *Lovell* v. *Evertson,* 11 Johns., 52. *Hartford Bank* v. *Barry,* 17 Mass., 94.

It should also be noticed that the case shows that Page was not indebted to the bank, and that the bank never had any interest in this order.

The bank failed. All its effects were assigned to receivers, against whose intelligence, vigilance and integrity nothing can be urged. After a careful investigation, the receivers were satisfied that the bank never had any interest in the subject matter of this suit; and at the March term, 1869, they entered upon the docket of this court their disclaimer of any such interest. It thus appears that the word "cashier" is merely descriptive; and that the rulings were literally as well as substantially correct.

The indorsement was not made to transfer any funds of the bank. It was an unnecessary act, done under the opinion often but erroneously held, that if a promissory note is made payable to

the order of A. B., it must be indorsed by A. B. to himself, to enable him to maintain an action.

IV. The only objection made to the admissibility of the deposition of R. K. Page and the exhibits therein referred to, was "that it was not competent thus by parol to explain or affect the order."

The answer is that it was not offered for any such purpose, and it did not tend to any such result, further than to show that the word "cashier" was descriptive of the person only. And it was admissible for this and for other purposes.

V. Certain questions propounded to H. K. Baker were objected to.

Mr. Baker was one of the receivers of the American Bank. He produced the journal and ledger of the bank. He had the means of ascertaining whether said Page was indebted to the bank at the date of the order, July 23, 1856. He stated his means of knowledge ; and, in substance, that he found no such indebtedness.

This testimony was pertinent to the inquiry whether the amount transferred by the order was the property of the bank. *Fairfield* v. *Adams*, 16 Pick., 381.

VI. The objections to the testimony of Calvin Spaulding cannot be sustained, for the reasons just given above.

VII. As there was no evidence showing that the bank ever had any interest in the order, but, on the contrary, that it had not, the ruling that the word "cashier" should be regarded as descriptive of the person, was correct. But whether strictly correct or not, the verdict should not be set aside, for reasons already given.

VIII. The plaintiff was under no obligation to pay the costs in the equity suit before proceeding in this. The equity suit was not for the same cause, nor between the same parties, nor was it commenced until after the suit at law.

IX. The instructions in regard to the notes alleged to have been loaned by Kimball to Page, and in regard to the assignment of Page to Danforth and Spaulding, are correct.

X. By the plea in bar, in form of a brief statement, the defendant admits the claim as made. 2 Doug., 575. 6 Ves., jr., 594.

Bars are not favored, and they must be made out strictly. *New England Bank* v. *Lewis*, 8 Pick., 113. Greenl. on Ev., §§ 530 —534. *Lord* v. *Chadbourne*, 42 Maine, 429, p. 443.

The bill in equity and the proceedings under it are not a bar to this suit. The parties are not the same, nor is the issue the same. In the equity suit the only question was, whether there was a trust which Howard could enforce—whether the bill of sale was absolute or conditional.

The dismissal of a bill where a trust is alleged and an account is asked, cannot operate as a bar to such an action as this. *Bridge* v. *Sumner*, 1 Pick., 371.

*J. Baker*, for the plaintiff, as to the extent of the powers of an auditor, and of the court over his report, cited *Locke* v. *Bennett*, 7 Cush., 445. *Quimby* v. *Cook*, 10 Allen, 32. *Clark* v. *Fletcher*, 1 Allen, 53.

The jury took the items of principal found by the auditor as follows:

| | |
|---|---:|
| 1. Accountable receipt of July 12, 1855, | $4,290.00 |
| 2. Proceeds of sale of one-sixteenth of ship "Lion," to Capt. Ryan, | 2,484.69 |
| 3. Three-sixteenths bark "Savannah," | 1,500.00 |
| 4. Note given to Kimball by Page, given up by Page, | 994.71 |
| 5. Seven-sixteenths primage paid by Howard for Capt. Ryan, and not paid over by Kimball to Ryan, | 656.25 |
| | $9,925.65 |
| Add interest from date of the writ, July 23, 1863, to March 8, 1871,—7 years and 7½ months, | 4,540.98 |
| | $14,466.63 |

This verdict, therefore, cannot be against the evidence in the case.

BARROWS, J. The first exception urged by the defendant is to the allowance of the amendment by the introduction of the fourth and fifth counts describing the order drawn by Rufus K. Page, July 23, 1856, and accepted by Nathaniel Kimball the defendant's testator, on the ground that this constitutes a new cause of action. We cannot so view it. As it stood previous to the amendment, the plaintiff's writ showed that the greater part of his claim consisted of sums alleged to have been due from Kimball originally to Page and to have been so transferred by Page to the plaintiff with Kimball's assent as to enable the plaintiff to sue therefor in his own name. This appears not only by the

account annexed but by the money count and the concluding part of the specifications under it. Such an assignment will enable the assignee to maintain an action for money had and received in his own name when the debtor has consented thereto and promised payment to him. *Lang* v. *Fiske et al.*, 11 Maine, 385.

The new counts are simply descriptive of the instrument by which the plaintiff undertakes to make out his title to the amount due Page, and Kimball's promise to pay it to him as Page's assignee.

They serve to make known more particularly the origin and character of the plaintiff's claim which had been previously stated in general terms, without introducing any substantially new cause of action.

The amendment was allowable under the statute (c. 82, § 9,) and numerous decided cases to which it is unnecessary to refer.

II. Page's order of July 23, 1856, directed to Kimball and accepted by him ran thus: "Value received, pay to the order of A. H. Howard, cashier, any balance there may be in your hands on settlement of my account with you," &c., and was indorsed, "Pay A. H. Howard, or order. A. H. Howard, cashier." The exceptions show that the defendant objected to the admission of the order in evidence under either of the amended counts,—under the fourth on the ground that it was not negotiable, not being for a sum certain, and if it were, then the plaintiff as cashier of the American Bank could not negotiate it to himself, without special authority from the bank; and under the fifth on the ground of a variance.

Upon the objections to its admissibility in support of the fourth count the exceptions state that the presiding judge made a *pro forma* ruling that the order was negotiable and that the plaintiff had authority to indorse and negotiate it to himself as he did on the ground that the word cashier was but *descriptio personæ*, and the order was admitted in evidence.

It is obvious that, whether technically correct or not, this ruling cannot have done the defendant any injustice if it can be made certain that the order was admissible under any one of the counts in the writ and operated as a legal transfer to the plaintiff of the balance due from Kimball to Page, July 23, 1856, so as to enable

the plaintiff to sue for it in his own name. To ascertain this, a review of the facts proved and the positions taken by the parties under their pleadings is necessary.

To the writ as amended the defendant pleaded the general issue with a brief statement that the plaintiff's suit was barred by the statute of limitations, and by the judgment of this court in defendant's favor upon a suit in equity brought by the plaintiff, which suit (the defendant alleges) involved the same causes of action set forth in this writ.

It is conceded that the action is not barred by the statute of limitations. The remaining questions then were: did the plaintiff ever have any cause of action, and if so, for how much; is it barred by the judgment in the equity suit. Among the facts not controverted it appears that prior to July 23, 1856, Kimball and Page had large business transactions together, growing mainly out of their ownership of parts of the same vessels, for which Kimball acted as ships' husband; that aside from the transaction between them respecting Page's half of the ship Ocean Steed (the character and effect of which are presently to be considered), Kimball was indebted to Page in a considerable amount on account of transactions respecting other vessels; that Page was largely indebted to the plaintiff by reason of the plaintiff's indorsements on his paper, and was desirous to secure him for his liabilities; that Page had conveyed by an absolute bill of sale his half of the Ocean Steed to Kimball, and received therefor Kimball's three negotiable promissory notes for $5000 each, two of which, if not all three, were deposited at the American Bank as security for the liabilities of Page, and Reed & Page to the bank, amounting to about $8000; that all three of the notes were subsequently paid and taken up by Kimball, one of them being offset against a note of Page held by Kimball and an order on Kimball from Page in favor of one Cox, and Kimball's disbursements on Page's part of ship Lion at St. Johns; that on the 23d of July, 1856, after the giving of these notes and the conveyance of Page's half of the Ocean Steed about the time of his failure in business in the preceding April, Page made and Kimball accepted the order in question, and it was delivered to the plaintiff. Thus far no controversy as to the facts.

But hereupon the defendant contended that the order was given first to the American Bank or to the plaintiff as cashier thereof to secure Page's liabilities to the bank; that if the order could be deemed negotiable the plaintiff as cashier had no authority to negotiate it to himself; that if Page's liabilities to the bank were paid after the order was given, the bank could no longer hold it nor transfer it to the plaintiff; that the conveyance of Page's half of the Ocean Steed to Kimball was intended only as security for the loan of the three $5000 notes to raise money upon; that it was specially agreed when those notes were given, April 17, 1856, that they should be payment of and offset against the balance then due from Kimball to Page and that all that the bank or the plaintiff could take by the order would be the balance if any after allowing Kimball the $15,000 for his notes, which would make a balance the other way and nothing due from Kimball to Page, July 23, 1856, upon which the order could take effect. As to this last position, which relates rather to the effect than to the admissibility of the order, the jury were duly instructed at defendant's request that if they were satisfied that Kimball loaned the notes for $15,000, and was to pay the notes, with an agreement that the amount due from him to Page, should be offset against the $15,000, and Page should be the debtor of Kimball for the balance, for which Kimball should hold half of the Ocean Steed, then the order would not assign anything to the plaintiff unless the balance of the account due from Kimball to Page at the time the notes were given exceeded the amount of the notes, which was not pretended.

Why three experienced business men should perform an act so completely nugatory as the making, acceptance and delivery of this order must be, if this hypothesis of the defendant's were to be accepted, it is not easy to see. Certainly they must have intended thereby to transfer an interest in the amount due from Kimball to Page either to the bank or to the plaintiff. If to the plaintiff, then it matters not whether the order was or was not technically speaking negotiable, nor whether the plaintiff had any authority to indorse it to himself, because it would follow that the interest passed at once to the plaintiff; the word cashier must be regarded

merely as *descriptio personæ* and no indorsement was necessary, because paper made payable to the order of a party is the same in legal effect as if made payable to him or his order.

The defendant's counsel argues that the most favorable ruling for the plaintiff which the law would authorize was to submit it to the jury to determine as a question of fact whether it was given to the plaintiff or the bank.

Had there been any evidence which would have authorized the jury to conclude that the bank ever had any interest in the order this would seem inevitable. But looking at the whole evidence we think this idea is conclusively negatived. The testimony must be regarded as establishing the fact that the bank was abundantly secured for the indebtedness of Page and Reed, and Page, by the Ocean Steed notes. So far as appears neither the president, directors nor receivers of the bank ever recognized the order as a matter in which the bank ever had any interest. As long ago as 1869, the receivers disclaimed such interest upon the docket in this suit. In fact no such interest appears ever to have been asserted, and there is nothing in the case to afford the slightest indication of its existence except the description of the plaintiff as cashier. In view of the other facts proved, we think the only reasonable conclusion was the one expressed in the ruling of the judge that this was only *descriptio personæ*.

If so it did not change the legal effect of the order any more than the addition of esq. to the name of the payee would do. It would follow that the order was admissible under the third count and sufficient to show title in the plaintiff to the amount due from Kimball to Page, July 23, 1856, whether the order was negotiable or not, and without proof of authority from the bank to indorse it.

The trial took place before the passage of the statute, c. 212, laws of 1874, and prior to that time it was the doctrine of this court that when the whole testimony, if believed, will not in law establish a fact, the presiding judge may express the legal effect of the testimony as matter of law. *Gilbert* v. *Woodbury*, 22 Maine, 246.

Whether the ruling that the word cashier was merely *descriptio*

*personæ* be regarded as the expression of an opinion upon the facts and testimony, or as a ruling in matter of law, it did the defendant no wrong, and the exception to it cannot be sustained. *McDonald* v. *Trafton*, 15 Maine, 225.

It is obvious as we have already seen that if this be so, the rulings in respect to the negotiability of the order or the authority from the bank to indorse it were purely immaterial. We remark in passing, that we see no propriety in extending the doctrine of *Fairfield* v. *Adams*, 16 Pick., 381, to any other than strictly negotiable securities, nor to cases where the holder claims distinctly to recover to his own use and not in any fiduciary capacity; nor do we perceive how it would be possible for the plaintiff to maintain this suit for the benefit of the bank which confessedly has no interest therein.

III. In connection with the ruling above discussed, we observe that none of the objections to the testimony admitted on behalf of the plaintiff seem tenable. The first, against the deposition of R. K. Page on the ground that it was not competent thus by parol to explain or affect the order, is not insisted on in argument here, and the answer is obvious that it was not offered for that purpose and does not tend to vary or contradict the written instrument but only to apply it and show the mode and purpose of its delivery, and like the testimony given by the receiver and president of the bank it is relevant and admissible for the purpose of showing that the bank had no interest in the order and claimed none. It is only by the admission of parol evidence to show that the plaintiff was, at the time of the making and delivery of the order, cashier of the American Bank that the defendant obtains an opportunity to argue that the bank may have had an interest therein, and the same kind of evidence is admissible to rebut the presumption which was required to raise it. It is no violation of the wholesome rule which prohibits the introduction of parol evidence to contradict, vary or control the terms of a written instrument.

It is true that the questions to the receiver and president of the bank serve only incidentally and indirectly to confirm the plaintiff's position that the order was made to secure him and not the bank

and not directly to establish it; but we do not see how the jury could have been misled thereby. If there was danger of it the defendant's counsel should have requested an instruction as to its application and effect. In fact the jury were instructed in substance that if the plaintiff did not become the holder of the order in his individual capacity until after Page's assignment to Danforth & Spaulding in October, 1857, he could not maintain the action.

IV. Before the case came on for trial it had been submitted to a competent and faithful auditor upon whose report the plaintiff relied. We are now to consider the exceptions taken to the admission of his report and the rulings respecting it. The exceptions state that the report of the auditor was offered in evidence by the plaintiff and was seasonably and duly objected to, but admitted by the court except that portion which makes the accompanying documents and evidence a part of the report. What the objection made at the trial was does not appear. In strictness the exception to the admission is liable to be overruled for this cause alone. *Emery* v. *Vinal*, 26 Maine, 295. *Comstock* v. *Smith*, 23 Maine, 202. *White* v. *Chadbourne*, 41 Maine, 149. But if we allow ourselves to infer that the objection alleged was the somewhat inconsistent one now urged in argument, that the evidence before the auditor was irregularly made part of the report and also that that evidence was not allowed to go to the jury so that the defendant might impeach the report by showing that its conclusions were not warranted by the evidence, we do not think it can be sustained. If the defendant desired to use that evidence to impeach the report, doubtless he might have had the opportunity by waiving his objection to the return of it as part of the report. His objection to its introduction by the plaintiff as part of the report was rightly sustained. We are clear that it is competent for the judge presiding at the trial, when an auditor's report is offered in evidence to reject such portions of it as are not proper to go to the jury and receive the remainder, ruling upon the introduction of those parts which are objected to as he would in the case of a deposition. *Jones* v. *Stevens*, 5 Metc., 373. The defendant was at liberty to put in

the same evidence which was before the auditor or such other evidence pertinent to the case before the jury as he desired and this right does not seem to have been abridged. Either party has that right and will commonly find it necessary to avail himself of it, as to disputed items, whether the object be to impeach or to support the auditor's report.

But the defendant complains also of the ruling with regard to the force and effect of the auditor's report. As stated in the exceptions it was that "the auditor's report was *prima facie* evidence of the amount which the plaintiff was entitled to recover, that it was competent for the defendant to disprove it, but it must stand unless he had impeached it." It is argued that this instruction had the effect to change the burden of proof from the plaintiff to the defendant; when on the contrary if the defendant's evidence balanced the force of the report the plaintiff ought to fail. The language of the statute is, the "report may be used as evidence by either party, and it may be disproved by other evidence." What does this imply?

Referring to the former statutes respecting auditors and their functions we find that by the law of 1821, c. 59, (after regulating in §§ 23 and 24, the course of proceeding in the now somewhat disused action of account), in § 25, provision is made that "in any action when it shall appear to the court that an investigation of accounts, or an examination of vouchers is necessary for the purposes of justice between the parties," auditors may be appointed by the court to state the accounts between the parties and to make report thereof to the court, which report "shall under the direction of the court be given in evidence to the jury; subject, however, to be impeached by evidence from either party." By the Laws of 1826, c. 347, this § 25 is repealed, the power of the court to appoint on motion of either party is limited to the first four days of the term when the action is entered, though an appointment may be subsequently made with the consent of both parties; "and the duty of auditors so appointed shall be to arrange the items of the accounts depending, consider the principles on which they depend and examine the vouchers offered in their support, and as far as convenient note the same in their statement;"

and make report to the court; "and if the parties agree that the auditor shall have power to examine witnesses and depositions according to the principles of law, such power shall be expressed in the rule certifying their appointment; and in that case their report shall be submitted to the jury to be by them considered in connection with all other evidence adduced."

Under the revision of 1841, c. 115, §§ 49, *et seq.*, the appointment was to be made by consent of parties; witnesses might be summoned and compelled to attend "as before referees;" the report might be "used by either party as evidence on the trial of the cause before the jury; but shall be open to be impeached or disproved by other evidence."

In the revision and condensation of 1857, c. 82, §§ 59, *et seq.*, (of which the present law found in R. S. of 1871, c. 82, §§ 62, *et seq.*, is an exact transcript,) there came full power to the court at any proper stage of the cause in the class of cases requiring it, with or without the consent of the parties, to appoint auditors "to hear the parties and their testimony, state the accounts, and make a report to the court." They are invested with the more important incidental powers of a subordinate tribunal and charged with the performance of its duties. "Their report may be used as evidence by either party, and it may be disproved by other evidence." The power to compel the attendance of witnesses and to hear the parties and their testimony would be nugatory unless accompanied with a power to pass upon the facts in controversy. Evidently we think there is implied here a power to settle such controverted facts as may be necessary to ascertain whether the debit or credit claimed ought to be allowed.

The results reached by the auditor are not conclusive upon the parties, but his report when offered in evidence is subject to be impeached, rebutted, controlled or disproved by competent evidence to be laid before the jury. But it amounts to *prima facie* evidence sufficient to warrant a verdict unless thus impeached or disproved. This is the view of its effect taken by the court in Massachusetts in a series of decisions under statutes substantially similar. *Allen* v. *Hawks*, 11 Pick., 359. *Lazarus* v. *Commonwealth Ins. Co.*, 19 Pick., 81, p. 97. *Taunton Iron Co.* v.

*Richmond,* 8 Metc., 434. *Kendall* v. *Weaver,* 1 Allen, 277. *Morgan* v. *Morse,* 13 Gray, 150.

Some of these cases go further and sustain the doctrine that the burden of proof is thereby changed.

But in the discriminating opinion in *Morgan* v. *Morse,* 13 Gray, 150, while attention is called to the loose and inaccurate mode of using the phrase, (the presiding judge having instructed the jury that the burden of proof was upon the defendant to overturn or control the auditor's report,) it was held not likely to mislead the jury and that the defendant was not aggrieved, and the general doctrine above stated is approved.

Bigelow, J., remarks that "it would have been more correct for the court to have instructed the jury that the report of the auditor in favor of the plaintiff was *prima facie* evidence, and sufficient to entitle him to a verdict unless it was impeached and controlled by the evidence offered by the defendant." The instruction thus commended is substantially the same as the one of which the defendant here complains. We think it unexceptionable. If the defendant had desired a more elaborate dissertation upon the burden of proof he should have made specific requests for instructions respecting it.

V. This writ was sued out July 23, 1863. Almost simultaneously, by a bill in equity brought against this defendant and Rufus K. Page and filed July 24, 1863, the plaintiff claimed that the conveyance of Page's half of the Ocean Steed to Kimball though absolute in form was intended only as security for the $15,000 in notes advanced by Kimball to Page to raise money upon, and that the conveyance and notes were to be subject to a settlement of the mutual and open accounts then subsisting between them and to such agreement as upon such settlement might be made between them; that upon an examination and adjustment upon this basis, in November, 1859, it was ascertained that Kimball was owing Page about $10,000 on the accounts, and reckoning in the notes which had been paid by Kimball, there was due Kimball, $5000, for which he held Page's half of the ship as security and in trust; and that it was then and there agreed between Page,

Kimball and the plaintiff, that Kimball should hold the same, after repayment out of the earnings, in trust for the plaintiff to whom Page was then and ever since largely indebted; that the net earnings of Page's half of the ship received by Kimball were more than sufficient to pay the balance of the loan; wherefore he claimed a decree that this defendant as the executrix of Kimball should convey the half of the ship so held and pay over the excess of the earnings, if any, to him.

The defendant in her answer, upon information obtained from said Kimball, denied the trust, insisted that the sale of Page's half of the ship to Kimball was absolute in reality as well as in form, "and not intended to have any connection with or bearing upon any settlement of any accounts subsisting between them," and that Page had no equitable interest in the ship which he could make over to the plaintiff. The case proceeded to a hearing upon bill, answer and proof. As it appeared that Page had made an assignment under the statute for the benefit of all his creditors, October 5, 1857, it was held that whatever the character of the conveyance any interest remaining in Page passed to his assignees before the alleged agreement of November, 1859, and so the plaintiff had no title.

The bill was dismissed with costs; and the defendant now claims that the judgment in that suit is a bar to this.

We cannot so view it. The question whether the plaintiff took anything by the attempted adjustment of the accounts and transfer of Page's supposed right of redemption in the Ocean Steed to him in November, 1859, is not identical with the question whether he acquired Page's interest in those accounts by virtue of Kimball's acceptance of an order in his favor, July 23, 1856. This latter question was not even incidentally decided in the equity suit.

To ascertain whether a former judgment is a bar to present litigation the true criterion is found in the answer to the question: was the same vital point put directly in issue and determined. 8 Am. Jur., 330–335. *Outram* v. *Morewood,* 3 East., 346. Greenl. on Ev., part III., vol. 1, §§ 528, 529, 530. *Lord* v. *Chadbourne,* 42 Maine, 429, p. 443.

Upon the assignment of the accounts and Kimball's assent thereto, the plaintiff had a plain and adequate remedy at law which he is now pursuing; not so as to the supposed right of redemption which was the matter in issue in the bill in equity.

VI. The point that the plaintiff should have been prohibited from prosecuting this suit until he had paid the judgment against him for costs in the equity suit is not pressed in argument. Clearly the case is not within the provisions of R. S., c. 82, § 111, and the defendant's motion was rightly overruled.

VII. The defendant contends that the verdict should be set aside as against the evidence.

This claim is founded upon the position that the proceedings in the plaintiff's equity suit and the testimony therein taken, (which seems to have been admitted here by consent of both parties,) conclusively prove that the character of the transaction between Page and Kimball was as therein asserted a loan of the notes, a reception of the conveyance of Page's half of the ship as security and in trust merely, coupled with an agreement that the balance of account due from Kimball to Page should go to offset or pay the notes loaned, Kimball to hold the ship as security for the diference only, and that Page's right of redemption passed to Messrs. Danforth & Spaulding his assignees.

The jury found otherwise, at all events so far as regards the agreement to offset the accounts against the notes given for the Ocean Steed. But this finding, though adverse to the testimony produced by the plaintiff in the equity suit, is in accordance as we have already seen, with the position then taken by this defendant that the sale was absolute and had no connection with the settlement of the accounts; and this receives confirmation from the fact of the making of the order (which would otherwise be an idle ceremony) and from the use which was agreed to be made and was made of the notes given by Kimball, whereby such an offset was precluded. The subsequent attempt by Page, Kimball and the plaintiff to arrange for a redemption, being abortive, ought not to be allowed to affect the rights of the plaintiff originally acquired by the assignment of the account and Kimball's acceptance.

The existence of any right of redemption in Page in the outset

has been steadily ignored by the defendant and we do not think it is demonstrated. It seems to have been an afterthought of Page, Kimball and the plaintiff which never ripened into a valid and binding act. If it ever existed it passed to Page's assignees in October, 1857. Their intelligence and fidelity to their trust cannot be questioned. It does not appear that they have ever taken any steps to enforce such supposed right; one of them, Spaulding, was a witness for the plaintiff at the trial of this cause without asserting any such right. Kimball's estate holds the ship and her earnings, as if the sale were absolute by a title which now appears to be unquestioned. We see no propriety in the use which the executrix attempts to make of the proceedings in the equity suit to defeat this action.

The plaintiff would seem to have been sufficiently punished for the assertion of an unfounded claim to redeem, by his subjection to costs in. that suit, and the difficulty and delay thereby inevitably caused in the enforcement of what are apparently his just rights in this.                    *Motion and exceptions overruled.*

APPLETON, C. J., DICKERSON, VIRGIN and PETERS, JJ., concurred.