GEORGE M. GRAFFAM *vs.* CASCO BANK & TRUST COMPANY.

Cumberland.      Opinion, November 7, 1940.

*Franklin R. Chesley,*
*Lloyd LaFountaine,* for plaintiff.
*Woodman, Skelton, Thompson & Chapman,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

MURCHIE, J.  The defendant brings this case before the court on exceptions to the finding and ruling of a justice of the Superior Court, acting pursuant to Section 26 of Chapter 91 of the Revised Statutes (1930), who decided the cause without the aid of a jury and ordered judgment for the plaintiff for the full amount of the draft on which the suit is based.

The plaintiff asks that the exceptions be overruled on the authority of *Frank* v. *Mallett,* 92 Me., 77, 42 A., 238, 239, where defendant, after exceptions alleged by him had been disallowed, sought to have them established in this court, in accordance with the provisions of what is now Section 24 of Chapter 91. His petition was dismissed in accordance with the well-established rule of law that "when a cause is tried by the presiding justice without the intervention of a jury," in accordance with the statute now in question, "exceptions to his rulings in matters of law do not lie, unless there has been an express reservation of the right to except."

This rule dates back to 1855 when, shortly following the enactment of the statute, originally found in Section 12 of Chapter 246 of the Public Laws (1852), it was first declared by a member of the court who had served prior to his judicial appointment as chairman of a commission authorized by the legislature to consider and report upon the consolidation of the District and Supreme Judicial Courts in language which may be considered as a reliable exposition of the legislative purpose:

"The obvious intention of the Legislature, was to make the adjudication of the presiding Judge final and conclusive. This section confers on the presiding Judge the power to determine all causes, when both parties agree and enter their agreement

.upon the docket, and that he shall direct what judgment shall be entered up. No exceptions are given in terms and the whole language of the Act shows none were intended. The design was to make his decision the end of all controversy, not that the losing party, after having agreed to submit to the decision of the Judge, and that he should direct what judgment should be entered up, should be permitted indefinitely to renew litigation. The decision of the presiding Judge in all matters of law or fact, submitted to his determination under this section, is final."

\*        \*        \*

"The parties may agree that the presiding Judge shall hear the cause, and upon hearing decide the facts, reserving by express stipulation the right to except to his ruling as to any question of law which may arise." *Proprietors of Roxbury* v. *Huston*, 39 Me., 312.

In the application of this precedent the court has heretofore determined that the certification of exceptions by the justice hearing a cause shall be conclusive in this respect in the absence of anything in the bill of exceptions to show the contrary. *Dunn* v. *Motor Co.*, 92 Me., 165, 42 A., 389 ; *State* v. *Intox. Liquors*, 102 Me., 385, 67 A., 312 ; *Waterville Realty Co.* v. *City of Eastport*, 136 Me., 309, 8 A., 2d, 898. The record before us is silent on the point but we note that thirteen exceptions on questions of evidence were taken in the course of the hearing and that counsel for the plaintiff who state in their brief, as the record supports, that the bill of exceptions was agreed to by them "as to form only" were allowed ten of them. In a case where counsel for both parties so obviously laid the groundwork for coming to this court on exceptions, this practice seems obviously just and proper. The endorsement "seen and agreed to *as to form only*" can hardly be expected to bring before a justice, to whom a bill of exceptions is presented for allowance, the question as to whether or not the docket entry by which the cause was submitted to him reserved the right of exceptions. We think the better practice in any case where no such reservation had in fact been noted would be to object to the allowance and call direct attention to the docket omission.

The defendant alleges eleven exceptions, the second and third of which claim error on the part of the justice who heard the cause in finding, respectively, that the draft sued on was a sight draft and that the defendant wrongfully released the bill of lading which was attached thereto. The other exceptions are not material to the issue before this court but it may be proper to note that the finding which is alleged and excepted to in the first is not necessarily involved in the decision of the cause and that those subsequent to the third relate to facts upon which the evidence was conflicting where the determination of the sitting justice, who had opportunity to appraise the testimony as it came from the mouths of witnesses, would be final. It has long been definitely established as law in this state that "findings of fact by a Justice sitting without a jury so long as they find support in evidence are final." *Ayer* v. *Railway Co.*, 131 Me., 381, 163 A., 270, 271 and cases therein cited. Under the decisions of this court the issue as to whether or not the record in a cause "finds support" is a question of law and "if there is no evidence to support the findings of such facts as must necessarily have formed the basis of the judgment . . . the finding is an erroneous decision of the legal conclusions to be drawn from the evidence, and is error of law, to correct which exceptions will lie." *Chabot & Richard Co.* v. *Chabot*, 109 Me., 403, 84 A., 892.

The decision here recites no factual findings but it must be based, as the second and third exceptions allege, either upon a finding of fact that the draft in question was a sight draft or upon a ruling of law that it should have been handled by the defendant as such. This court may properly disregard the former since a copy of the draft is in evidence and recites the terms of payment clearly in the words "Net cash ten days from arrival." The issue arises under the third exception which alleges error of law in the finding that the defendant "wrongfully released the bill of lading attached to the draft."

The action is assumpsit, brought by the plaintiff in his capacity as trustee for a manufacturer, to recover on a draft delivered to the defendant bank for collection with a bill of lading attached. Plaintiff was acting under a three-party trust agreement, of which defendant had full knowledge, which recited a purpose to secure all credit advanced to the manufacturer; conferred authority on the trustee to pledge "sight drafts with bills of lading attached" with

the defendant bank as collateral; directed that products be shipped "sight draft attached to bill of lading"; and vested all proceeds of the trust, after the payment of all credit secured, in the manufacturer upon his certification that no expenses remained unpaid. Copies of the trust agreement (which appears by the exhibit not to have been actually signed by the plaintiff), the draft, and the invoice which accompanied the draft and bill of lading, and which states the terms in substantial conformity with the terms of payment of the draft in the words "Net ten days from arrival," are in evidence. The record discloses that the plaintiff trustee used the treasurer of the manufacturer as his agent for transactions with the defendant bank, including the delivery of the draft which is the subject matter of this suit; that that draft was originally forwarded by the defendant to its agent with instructions to deliver the attached bill of lading "only on payment"; and that the bill was subsequently released against acceptance of the draft when the treasurer-agent called attention to the ten-day terms of the draft and invoice. Testimony was given, and not controverted, that the operations of the manufacturer produced a profit under the trust, notwithstanding the non-payment of the particular draft, but that the manufacturer made no certification as to the payment of expenses in accordance with the provision of the trust above noted.

Upon these facts it is apparent that the decision below was based upon a ruling of law that the provisions of the trust instrument required that the defendant handle the particular draft as a sight draft notwithstanding the credit terms stated in the draft and invoice. Defendant's third exception raises squarely, within the rule laid down in *Sardine Co.* v. *Olsen*, 117 Me., 26, 102 A., 797, the question of error of law in the interpretation of that document. The decision can only be supported if, as a matter of law, the defendant was limited to extending credit to the trustee against *sight* drafts or, accepting drafts which on their face extended credit, to handling such as if they were drawn at sight.

We do not believe, upon a consideration of all the facts, that such an interpretation was either necessary or proper. Not only was the purpose of the trust a limited one which the evidence discloses has been fully accomplished, but the record discloses that the limitation imposed upon the trustee for negotiating loans upon the basis of

*sight* drafts and the direction that shipment be made *sight* draft attached to bill of lading were written into the instrument at the request of the defendant bank which was named therein as the agency where the borrowings of the trustee were to be made. On the record this limitation was waived by the defendant at the request of the trustee and the manufacturer, who became the sole beneficiary of the trust when all outstanding credit became fully paid, expressed in the first instance by delivery to the defendant bank of a time draft actually signed by the trustee and reaffirmed by that beneficiary prior to the release of the bill of lading on acceptance of the draft.

The manufacturer, who is now the sole beneficiary of the trust, will become entitled to the entire proceeds thereof upon certification to the trustee of the facts disclosed in the record. It would be an anomaly to permit the plaintiff, notwithstanding his own assent to the use of a time draft, to recover of this defendant, for the benefit of a cestui who as against the defendant is clearly barred from retaining it, the amount of the draft in question. Under these circumstances we believe a proper construction of the trust instrument is that the word "sight" was not intended to be a limitation for the benefit of the cestuis que trustent, but was incorporated in the instrument for the convenience, if not for the protection, of the defendant and imposed no limitation except one which the defendant, at the request of the trustee and beneficiary certainly, if not at the request of the trustee alone, was fully entitled to waive. The mandate must be

*Exceptions sustained.*