ARTHUR G. OUELETTE
AND
MARY R. OUELETTE
*vs.*
JOSEPH ALBERT PAGEAU
AND
PEPPERELL TRUST COMPANY, TRUSTEE

York.   Opinion, July 13, 1954.

*Simon Spill,*
*Charles Smith,* for plaintiff.

*Lausier & Donahue,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, TIRRELL, WEBBER, BELIVEAU, TAPLEY, JJ.

FELLOWS, C. J. This action on a contract was brought in the Superior Court for York County, and was heard by the presiding justice at the October Term, 1953, without a jury. After some testimony had been taken, the court appointed an auditor and adjourned to December 8, 1953. The auditor heard the parties and reported to the court that, if entitled to recover, the plaintiffs were entitled to

$2022. Hearing was resumed before the presiding justice on December 8, 1953 and the auditor's report put in evidence, and the presiding justice gave judgment to the plaintiffs for the amount stated in the auditor's report. The case comes before the Law Court on defendant's exceptions. The motion for a new trial, also filed by defendant, is not, and cannot be, considered.

Briefly, the facts show that the plaintiffs Arthur G. and Mary R. Ouellette (husband and wife) were engaged by the defendant Joseph A. Pageau, owner of a motel at Old Orchard, to carry on the motel and apartments from May 7, 1953 to the end of the summer season in September 1953. The amount to be paid was testified to by plaintiff Mary Ouelette as $200 a month payable monthly plus a commission of ten percent on gross receipts. The commission was to be payable at the end of the season. The defendant Pageau denied this testimony relative to the amount per month and denied the commission, and claimed certain payments.

The plaintiff husband and wife carried on the defendant's motel business from May to August 25th when they were discharged after a "word skirmish" but without cause, as the plaintiffs claim. They carried on all the work alone. The defendant had other interests in Canada and was away practically all season except for occasional visits. The plaintiffs' work was 24-hour service, if necessary. The plaintiff Mary Ouellette assigned guests to their apartments, cared for and kept apartments cleaned and beds in order, had guests sign a registration card containing motel number and rate, the plaintiff herself signed each card with her own initials. These cards, with money collected by her from the guests, were given to or sent to the defendant Pageau. Before giving the registration cards to the defendant Pageau, the plaintiff made a copy in an account book of the facts stated on the cards and showing the amounts col-

lected by her for rentals. This record was the only account kept, and it was made by plaintiff Mary Ouellette from the cards that she herself made or filled out and that she and the guests had signed. She made the account day by day from these cards before she gave the cards, with the money received, to the defendant. The defendant had the cards with him in Canada. Her purpose in making this account was to keep a record of the gross receipts and the money that she sent to the defendant.

After a portion of the case had been tried, the presiding justice saw the necessity for an audtior (Revised Statutes, 1944, Chapter 100, Section 90) and appointed an auditor. The case was continued to await the auditor's report. After the auditor had heard the testimony of the parties, had investigated the accounts, and examined the many vouchers, he filed his report which was admitted in evidence at the adjourned hearing. Judgment was rendered for the plaintiffs.

Various questions have been raised in this case which we consider as follows:

### EXCEPTIONS

With relation to exceptions in a case before a presiding justice without a jury, the statute does not provide for the procedure. The statute authorizing the hearing without a jury is Revised Statutes 1944, Chapter 94, Section 17 which provides: "The justice presiding at a term of the superior court shall decide any cause without the aid of a jury, when the parties enter upon the docket an agreement authorizing it."

The design of the Legislature was, that where the parties agreed that the presiding justice should hear the case, this decision was final. There was no provision for exceptions. The only way that parties were permitted to take excep-

tions to any ruling of law was by reserving the right to except by express stipulation. *Roxbury* v. *Huston*, 39 Me. 312. This reservation should be on the docket. See *Graffam* v. *Casco Bank*, 137 Me. 148 for history of the statute, and the reason for necessity of reservation of right to except.

It is, therefore, the rule of practice in Maine that where a cause is tried by a presiding justice without the intervention of a jury, in accordance with statute, exceptions to the judge's rulings in matters of law do not lie, unless there has been an express reservation of the right to except.

If there has been no express reservation and a bill of exceptions is presented to the justice for his signature and the justice is prepared to sign, the opposing party may object to the allowance, and call attention to the docket omission. *Graffam* v. *Casco Bank*, 137 Me. 148. If the judge, however, signs the bill of exceptions, the certification that exceptions are allowed is conclusive, provided there is nothing in the bill of exceptions itself or in the certificate of the judge to show the contrary. *Graffam* v. *Casco Bank*, 137 Me. 148; *State* v. *Intox. Liquors*, 102 Me. 385; *Dunn* v. *Motor Co.*, 92 Me. 165; *Waterville Realty* v. *Eastport*, 136 Me. 309, 312; *Poland* v. *McDowell*, 114 Me. 511.

In a case heard by a presiding justice without a jury, exceptions lie, to his rulings, if exceptions are reserved. The *right* to except must be reserved. *Stern* v. *Fraser Paper Co.*, 138 Me. 98. The Law Court, however, has no jurisdiction of a motion for a new trial where a case is heard by the single justice. *Espeargnette* v. *Merrill*, 107 Me. 304, 305; *Levee* v. *Mardin*, 126 Me. 133; *Public Loan Corp.* v. *Bodwell-Leighton Co.*, 148 Me. 93, 94; *Sears Roebuck* v. *Portland*, 144 Me. 250, 256.

In this pending case, heard before the presiding justice without a jury, the docket shows no reservation of the right to except, but the record shows that both sides took several

exceptions and that exceptions were granted to both. The docket shows "transcript of testimony ordered to be filed on or before March 1, 1954 and the extended bill of exceptions by March 15, 1954." The docket also shows "Extended bill of exceptions filed March 10, 1954. Objections to the allowance of the bill of exceptions filed March 10, 1954 by plaintiffs. Bill of exceptions allowed March 15, 1954."

The certificate of the presiding justice was as follows:

> The foregoing exceptions having been presented within the time required, and due notice thereof having been given to the adverse party through his attorneys, and being found to be true are allowed, if allowable, the adverse party's objections to their allowance having been filed and considered by the Court.

The only objection to the allowance is the statement filed by the plaintiff that the docket showed no reservation of the right to claim exceptions. The presiding justice allowed the exceptions "if allowable." "Allowable" means "not forbidden," "not unlawful," "not improper." Webster's New International Dictionary. The presiding justice had the right to allow the exceptions and did allow them although he may not have been obliged to do so. In fact both of the parties had taken exceptions, and the court recognized the right to take exceptions, in many instances during the course of the trial. The presiding justice allowed them. In any event, the Law Court cannot look beyond the bill of exceptions. The bill of exceptions is complete, and the bill is allowed. The certification is conclusive. *Graffam* v. *Casco Bank*, 137 Me. 148 and cases *supra*. See also *Carey* v. *Bourque-Lanigan Post*, 149 Me. 390, 102 Atl. (2nd) 860.

FIRST EXCEPTION: The defendant objected to the introduction in evidence of a record book kept by plaintiff Mary Ouelette, copied by her from day to day from the cards

that she made or filled out showing registration of guests, the number of the motel or apartment, the rate, and the total amounts paid by guests. The cards were initialed by plaintiff and given by the plaintiff to the defendant motel owner, together with the money received by her. The plaintiff testified to the account book as made by her from the original cards made or filled out by her and the total amount of cash or checks paid by the guests. The total amount of cash received by the plaintiff as shown by the account was $18,645. The account book was offered and admitted in evidence. The defendant's attorney objected to its admission because "not the original record. The original record are the cards." The presiding justice said he admitted the account "because it is an original record which she made simultaneously from the cards. If it is incorrect, of course it is open to cross examination and you may introduce the cards to compare with the original. I am going to admit it and give you an exception." The presiding justice was correct. The plaintiff Mary Ouelette made and had personal knowledge of the original cards or slips, and she had full and complete personal knowledge of the transactions as to each and all of the various items that she entered in the account. She was examined and cross examined on almost all of the items. The presiding justice could well find that the entries were made in good faith in the regular course of business and before suit. The account here differs in form only from the usual account of a grocer who makes his account from slips in the regular course of business, which slips were made by himself, and others in his employ. The defendant takes nothing by this exception. Revised Statutes 1944, Chapter 100, Section 133. *Hunter* v. *Totman*, 146 Me. 265.

SECOND EXCEPTION: The second exception relied on by the defendant is to the admission of the auditor's report at the continued hearing, when the report was submitted and

offered in evidence. The objections to the report of the auditor were stated to be (1) failure of auditor to correct entries in the account, (2) failure to consider withholdings from income taxes and social security, (3) disregard of defendant's testimony that he only received $900 in May, and not $1864, appearing in the account, (4) failure of auditor to determine the "take" of each motel for whole season May 15th to September 15th, (5) failure of auditor to properly weigh testimony regarding a check for $150 given by defendant on August 25, 1953, (6) that the auditor's report was based primarily on the plaintiff's account book.

We see no merit in this exception. An auditor's report may be used as evidence by either party and is prima facie evidence, but it may be impeached, controlled or disproved by competent evidence. It is sufficient to warrant a verdict unless impeached or disproved. *Howard* v. *Kimball*, 65 Me. 308. Revised Statutes 1944, Chapter 100, Section 92.

An auditor has the power to pass upon the facts in controversy and settle them to ascertain correctness of debits and credits. *Smith* v. *Minnick*, 88 Me. 484. An auditor is part of the court itself. *Payne* v. *Insurance Co.*, 69 Me. 568. See also *King* v. *Thompson*, 116 Me. 316; *Phipsburg* v. *Dickinson*, 78 Me. 457.

In this case the defendant did not impeach the auditor's report. He apparently relied on evidence already in the case, or before the auditor, and evidence later introduced. The "failure" of the auditor to believe the defendant and his evidence and to "properly weigh the testimony" were matters for the auditor, and so far as appears, he did weigh it. Withholdings for income taxes and social security were immaterial under the circumstances. A possible breach of Federal law might be material for another case. The total "take" might not be material because plaintiffs were dis-

charged in August. If the evidence of the plaintiff was believed, as undoubtedly it was, the auditor and the presiding justice could well think that these cards sent to the defendant in Canada, if not lost entirely, might possibly have been altered in "form and figure" when they came back to this country. The record shows differences between the auditor's report, the testimony of the plaintiffs, and evidence offered by the defendant, which differences the defendant claims sustain his objections, but the auditor as well as the presiding justice had the right to believe what they thought was true. *Richardson* v. *Richardson,* 146 Me. 145; *D'Aoust, Applt.,* 146 Me. 443. The auditor's report was not impeached or disproved in the mind of the presiding justice. It was based on competent evidence. The presiding justice could properly accept the report and base his findings thereon.

THIRD EXCEPTION: The defendant offered to prove the total costs and expenses for running his motel for the entire season, as bearing on the improbability that defendant contracted to pay 10% of gross receipts as the plaintiffs claimed. This evidence was excluded subject to defendant's exception. The exclusion was a matter of judicial discretion as being irrelevant or immaterial. We fail to see that discretion was abused, and we fail to see that the defendant was harmed by its exclusion. This was a trial before a presiding justice. There was no jury.

The Law Court cannot consider the motion for a new trial in this case. The case was heard by a presiding justice without a jury. *Sears Roebuck & Co.* v. *Portland,* 144 Me. 250. At all events, there was credible and competent evidence on which the presiding justice could base his decision. *Edwards* v. *Goodall,* 126 Me. 254. The entry must, therefore, be

*Exceptions overruled.*