ELIZABETH M. RICHARDSON
*vs.*
GEORGE DEWEY RICHARDSON

Lincoln.    Opinion, February 6, 1951.

*Harvey R. Pease,* for plaintiff.

*Alan L. Bird,*
*Samuel W. Collins, Jr.,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

NULTY, J.    Exceptions by the plaintiff from the Superior Court of Lincoln County.

The cause of action was a writ of entry and by agreement was heard by the court without a jury and judgment was for the plaintiff for a specific part of the premises, although less than the plaintiff demanded.    See Sec. 10 of Chap. 158 of the R. S. (1944).

Plaintiff demanded property in Westport, Maine, which according to the deed to the plaintiff duly admitted in evidence contained the following description:

> "A certain piece or parcel of land, situated in Westport, in the County of Lincoln and State of Maine, and being lot numbered thirty-eight (38) on a plan of 'Echo Home,' Westport, Maine, made by S. C. Taft, C. E. dated May 23, A. D. 1890 and recorded in said Lincoln County Registry of Deeds. Said parcel of land is bounded and described as follows: Easterly on Bay Street, as shown on said Plan; Northerly on Lot #37, on said Plan; Westerly on Lot #43 on said Plan; and Southerly on Lot #39, on said Plan, containing 4950 Square feet of land, more or less."

Plaintiff also demanded in her declaration, in addition to said Lot #38, the portion of Bay Street (a street laid out on said plan) which adjoins said Lot #38 on the east, and also such land as lies easterly of said street between said street and low water mark of equal width with said Lot #38. The sitting justice found that plaintiff had acquired title to said Lot #38 in fee simple and that the description of said Lot #38 was clear, plain and unambiguous and was described by number referring to the recorded plan. He also found that the bounds were clearly stated, including the east bound thereof, and that the square footage was stated and conformed exactly with the square footage shown on the plan to be within the confines of said Lot #38. As to the claim of said plaintiff to the fee in said street (Bay Street) and to the land between said Bay Street and low water mark based on the assumed legal presumption that the original grantor by his deed of said Lot #38 intended that all land between said Lot #38 and low water mark, including said street, was included in the conveyance, the sitting justice found that Bay Street was never laid out, built, used or accepted. It existed only upon the plan and the sitting justice found that except for the right of passage which plaintiff had along Bay Street as delineated on the plan she

took no fee to the land designated as Bay Street or to the land along the shore between said Bay Street and low water mark. Based on the foregoing facts the sitting justice gave judgment for the plaintiff as to said Lot #38 and excluded any portion of said Bay Street and the land easterly thereof between Bay Street and low water mark.

It is almost unnecessary to again state the law with respect to findings of fact by a justice sitting without a jury because it has been definitely established as law in this State that "findings of fact by a justice sitting without a jury so long as they find support in evidence are final." See *Ayer* v. *Railway Co.*, 131 Me. 381, 163 A. 270, 271; and cases therein cited. Also *Graffam* v. *Casco Bank & Trust Co.*, 137 Me. 148, 151, 16 A. (2nd) 106; *Picken* v. *George Dewey Richardson et al.*, 146 Me. 29, 77 A. (2nd) 191. There was ample credible evidence to support the findings of fact by the sitting justice and his decision so far as the facts are concerned is conclusive unless the exception, seasonably taken by the plaintiff, raises an error of law which has prejudiced the plaintiff.

According to the bill of exceptions the plaintiff excepts to the finding of the sitting justice that plaintiff's title extended easterly only to the westerly bound of Bay Street. This raises a question of law which, however, has been considered on more than one occasion by our court. Simply stated, the question of law raised in this case is whether or not land bounded on a proposed street or private way, existing only by designation on a plan, carries to the grantee by the conveyance the fee or any part of the fee in said street or in other land not specifically included in the description. Our court in the early case of *Bangor House Proprietary* v. *Brown*, 33 Me. 309 at 314 (1851) said:

"As the law has been established in this State, when land conveyed is bounded on a highway, it extends to the centre of the highway; where it is

bounded on a street or way existing only by designation on a plan, or as marked upon the earth, it does not extend to the centre of such way.

"The occasion of such difference in effect may be ascertained. The owner of land, who has caused it to be surveyed and designated as containing lots and streets, may not be able to dispose of the lots as he anticipated, and he may appropriate the land to other uses; or he may change the arrangement of his lots and streets to promote his own interest, or the public convenience in case the streets should become highways. He does not by the conveyance of a lot bounded on such a way hold out any intimation to the purchaser, that he is entitled to the use of a highway to be kept in repair, not at his own, but at the public expense, for the common use of all. While he does by an implied covenant assure to him the use of such designated way in the condition in which it may be found, or made at his own expense. By a repurchase of that title, the former owner would be entitled to close up such way, as he would also by obtaining a release of the right of way.

"There is no indication in such cases of an intention on the part of the grantor to dispose of any more of his estate than is included by the description, with a right of way for its convenient use.

"When a lot conveyed is bounded on a highway expected to be permanent, the intention to have it extend to the centre of it is inferred, (among other reasons noticed by this Court in former cases,) from the consideration that the vendor does not convey or assure to the vendee a right of way, the law affording him in common with others a more permanent and safe public way, to be kept in repair at the public expense. The vendor not being burdened by an implied covenant, that the vendee shall have a right of way, has no occasion to retain the fee of the highway for that purpose. Hence arises one motive inducing him to convey all the rights, which he can convey to land covered by the highway."

The rule announced above with respect to the title to the fee in private ways or streets has remained unchanged in this State to the present time and seems decisive of this case. See *Ames* v. *Hilton*, 70 Me. 36 (1879) ; *Winslow* v. *Reed*, 89 Me. 67, 35 A. 1017 (1896) ; *Coleman* v. *Lord*, 96 Me. 192, 194, 52 A. 645 (1902) and cases cited. See also *Young* v. *Braman*, 105 Me. 494, 497, 75 A. 120 (1909).

In 1930 in *Stuart et al.* v. *Fox et al.*, 129 Me. 407, 415, 152 A. 413, we considered the title to a lot of land arising out of the abandonment of a railroad right of way, the plaintiffs' claim being that the deed under which they claimed title conveyed the fee to the center of the railroad property and that on the abandonment of the railroad right of way they became possessed of the abandoned land free from the encumbrance of the railroad right of way on the theory that a railroad right of way was a highway and the same rule which applied in the case of land bounded on a highway should apply to land adjoining a railroad right of way. In the exhaustive opinion the authorities were extensively reviewed, not only those relating to railroad rights of way but of those relating to land bounded on highways and on private ways and non-navigable water ways and also lands on tidewater to the extent necessary to determine the reason and meaning of the presumption that the title extends to the center of the way in the case of highways and to the thread of the stream in the case of non-navigable streams and to flats between high and low water mark under the Colonial Ordinance of Massachusetts 1641-47 and we reached the conclusion that there was reason for extending the presumption to highways, non-navigable water ways and tidewater flats but that to extend it to private ways would result in an arbitrary rule of construction not based on a real intent and one that does not follow the ordinary rules of construction.

Applying the rules of law set forth above to the instant case causes us to conclude that the presumption herein re-

ferred to should not be extended to private ways or streets. It, therefore, follows that the ruling of the sitting justice with respect to the extent of plaintiff's title was correct and the plaintiff's exceptions are of no avail.

*Exceptions overruled.*