2005 ME 52

**Francis S. DRISCOLL Jr. et al.**

v.

**Ernest W. MAINS Jr. et al.**

Supreme Judicial Court of Maine.

Argued: March 24, 2005.
Decided: April 8, 2005.

Steven W. Rand, Esq. (orally), Desmond & Rand, P.A., Westbrook, for plaintiffs.

Sally J. Daggett, Esq. (orally), William H. Dale, Esq., Jensen Baird Gardner & Henry, Portland, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Ernest W. Mains Jr. and Florence L. Mains appeal from a partial summary judgment entered in the District Court (Portland, *Horton, J.*) in favor of their neighbors, Francis S. Driscoll Jr., Richard O. Bernier and Kelly Lynn Bernier, and

Wendy J. Smith[1] regarding the ownership of land in Westbrook designated as paper streets[2] on the Cumberland Heights subdivision plan recorded in the registry of deeds. The Mainses argue, *inter alia,* that the court erred when it applied 33 M.R.S.A. § 469–A (1999) to divest them of record ownership of the paper streets. We agree and vacate the summary judgment in favor of the Driscolls.

## I. BACKGROUND

[¶ 2] In 1920, a plan of the Cumberland Heights subdivision in Westbrook was recorded with the Cumberland County Registry of Deeds. The subdivision plan contained drawings of housing lots and paper streets. On December 15, 1965, the Mainses purchased lots numbered 0, 02, 03, 04, 05, 5, 20, 21, 22, 23, 26, 27, 28, 29, 30, 31, 32, 33, and a portion of lot 01 in Cumberland Heights. In 1972, the Mainses acquired title to the paper streets in the subdivision, namely, Essex Street, Whitney Avenue, and a section of Hill Street from the heir of the original developer of Cumberland Heights. The Mainses recorded their deed to the paper streets in the same year.

[¶ 3] The Driscolls, collectively, own lots numbered 8, 9, 13, 14, 15, 16, 17, 18, and 19 in Cumberland Heights. Their relevant property abuts the paper streets, Whitney Avenue and Essex Street.[3]

[¶ 4] In 1987, the Legislature passed "An Act to Enhance the Marketability of Titles" (the "Paper Streets Act") for the purpose of clarifying title to paper streets.

P.L.1987, ch. 385 (effective September 29, 1987) (codified at 23 M.R.S.A. §§ 3031–3035 (1992 & Supp.2004); 33 M.R.S.A. §§ 460, 469–A (1999)). In 1997, the Paper Streets Act was amended so that any paper street that had not been constructed or used prior to September 29, 1987, was deemed vacated on the later of September 29, 1997, or fifteen years after a plan was recorded if the street had not been constructed or accepted as a town way, unless the municipality voted to extend the time period. P.L.1997, ch. 386, §§ 1–2 (effective September 19, 1997) (codified at 23 M.R.S.A. § 3032(1–A) (Supp.2004)). In this case, the City of Westbrook never accepted or developed the paper streets and they were vacated by operation of law on September 29, 1997.

[¶ 5] As a result of the vacation, the city assessed the paper streets as if the owners of the abutting lots owned to the centerline of each street. Consequently, in March 2000 the Mainses filed a notice with the registry of deeds, pursuant to 23 M.R.S.A. § 3033 (1992), claiming ownership of the streets and served notice of their claim to all lot owners in the Cumberland Heights subdivision. The Driscolls responded in December 2000 and recorded their notice of ownership to the streets. In June 2001 the Driscolls filed a complaint with the District Court to quiet title to the paper streets and requested a declaratory judgment regarding the applicability of 23 M.R.S.A. §§ 3031–3035. Both parties moved for a summary judgment. The court denied the Mainses' motion and

---

1. Hereinafter referred to collectively as "the Driscolls."

2. A paper street is defined as "A thoroughfare that appears on plats, subdivision maps, and other publicly filed documents, but that has not been completed or opened for public use." Black's Law Dictionary 1136 (7th ed.1999). The statute refers to paper streets as "proposed, unaccepted ways." *See, e.g.,* 23 M.R.S.A. §§ 3031–3035 (1992 & Supp.2004).

3. Richard O. Bernier and Kelly Lynn Bernier purchased their property in 1989 (lots 15, 16, 17), Francis S. Driscoll Jr. in 2000 (lots 13, 14, 18), and Wendy J. Smith in 2003 (lots 8, 9, 19). Smith was substituted as a party in this action pursuant to M.R. Civ. P. 25.

granted a partial summary judgment in favor of the Driscolls, reasoning, in part, that section 469–A was the correct statute to determine title to the paper streets, and the Mainses had not satisfied the notice requirements of the statute. The Mainses filed a motion for reconsideration, which was denied. The Mainses now appeal from the summary judgment granted in favor of the Driscolls.

## II. DISCUSSION

[¶ 6] We review a summary judgment de novo, "viewing the evidence in the light most favorable to the nonmoving party, to determine whether the parties' statements of material fact reveal a genuine issue of material fact." *See Tucci v. City of Biddeford*, 2005 ME 7, ¶ 9, 864 A.2d 185, 188. When construing a statute, we look to its plain meaning and try to give effect to the legislative intent. *See Town of Ogunquit v. Dep't of Pub. Safety*, 2001 ME 47, ¶ 7, 767 A.2d 291, 293. When a reasonable interpretation of a statute would satisfy constitutional requirements, we apply that interpretation. *See Town of Baldwin v. Carter*, 2002 ME 52, ¶ 9, 794 A.2d 62, 66–67.

[¶ 7] The Driscolls claim that the court correctly applied section 469–A to determine title to the paper streets because the original grantor failed to expressly reserve title to the paper streets and the Mainses failed to assert their interest in accordance with the statute. The Mainses assert that the court erred when it applied section 469–A to paper streets that were conveyed by a recorded deed prior to the enactment of the Paper Streets Act, and that the court's interpretation of the statute would violate their constitutional protections. We agree with the Mainses.

[¶ 8] The Paper Streets Act was enacted in 1987 for the purpose of clarifying title to unclaimed paper streets and to eliminate the possibility of ancient claims. *See* 23 M.R.S.A. § 3035 (1992). Title 23 M.R.S.A. § 3031(2) addresses public and private rights in paper streets within subdivisions, and states:

> **Private rights.** A person acquiring title to land shown on a subdivision plan recorded in the registry of deeds acquires a private right-of-way over the ways laid out in the plan. If a proposed, unaccepted way is not constructed within 20 years from the date of recording of the plan, and if the private rights created by the recording of the plan are not constructed and utilized as private rights within that 20–year period, the private rights-of-way in that way terminate.
>
> *Unless title has been reserved pursuant to Title 33, section 469–A*, when the private rights established by this subsection are terminated as provided in this subsection or by order of vacation by the municipality, the title of the fee interest in the proposed, unaccepted way for which the private rights-of-way have terminated passes to the abutting property owners to the centerline of the way.

23 M.R.S.A. § 3031(2) (1992) (emphasis added). As a result, if title has not been reserved pursuant to section 469–A, the fee interest in paper streets therefore passes to the abutting property owners. Section 469–A discusses how to reserve title to paper streets and states, in part:

> **1. Reservation of title.** Any conveyance made before the effective date of this section which conveyed land abutting upon a proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds shall be deemed to have conveyed all of the grantor's interest in the portion of the way which abuts the land conveyed, unless the

grantor expressly reserved his title to the way by a specific reference to this reservation in the conveyance of the land.

**2. Intent to reserve.** Any grantor who, before the effective date of this section, conveyed land abutting a proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds with the intent to reserve title to the way, but who did not expressly reserve title to the way as required in subsection 1, or *any person who claims title to the way by, through or under the grantor, may preserve the grantor's claim by recording the notice set forth in subsection 3,* in the registry of deeds where the pertinent subdivision plan is recorded, within 2 years after the effective date of this section.

**3. Notice.** The notice required under subsection 2 shall contain:

    **A.** An intelligible description of the way or portion of a way in which title is being claimed;

    **B.** The name and address of the person on whose behalf the title is being claimed;

    **C.** A description, including specific reference, by date of recording and the volume and page numbers, to that conveyance, of the recorded instrument in which the person claims title to the way portion of the way which was intended to be reserved; and

    **D.** A duly verified oath taken by the person claiming title before a person authorized to administer oaths.

33 M.R.S.A. § 469–A(1), (2), (3) (1999) (emphasis added).

[¶ 9] It is undisputed that the Mainses did not reserve title to the paper streets pursuant to section 469–A. The District Court found that because the Mainses did not file such a reservation of title, ownership of the paper streets abutting the Dris-colls's lots passed to the Driscolls up to the centerline of each street. This interpretation of the Paper Streets Act, however, contravenes the statute's plain language and its purpose. The statute was promulgated to clarify the ownership of *unclaimed* paper streets, not streets that had been validly conveyed by a deed.

[¶ 10] The plain language of the statute refers to unclaimed ways by stating, in part:

> Nothing in those sections [3031–3034] may be construed to affect [*sic*] the nature of any right or interest which may be claimed in property to which those sections apply, or to affect the law regarding the sale, release or other disposition of such a right or interest.

> Sections 3031 to 3034 shall be liberally construed to affect the legislative purpose of enhancing the merits of title to land by eliminating the possibility of ancient claims to proposed, unaccepted, unconstructed ways that are *outstanding on the record but unclaimed.*

23 M.R.S.A. § 3035 (emphasis added). The Mainses' ownership is neither unclaimed nor outstanding on the record. Any person performing a title examination in the registry of deeds would find the deed transferring fee simple interest in the paper streets to the Mainses. Before the adoption of the Paper Streets Act, when an original landowner or developer conveyed property bounded by a street or way existing only by designation on a plan, such conveyance did *not* extend to the center of such street or way. *See Richardson v. Richardson,* 146 Me. 145, 147–48, 78 A.2d 505, 506–07 (1951). While the Paper Streets Act has since changed the law, the Mainses' 1972 deed was a valid conveyance of the paper streets under the law at that time.

[¶ 11] By enacting the Paper Streets Act, the Legislature could not have meant to divest ownership of previously conveyed paper streets without due process or adequate compensation. Such an interpretation of the statute as applied to these facts would produce constitutional violations, which could not have been the intent of the Legislature. Because the statute only purports to clarify title to unclaimed paper streets and not streets that have been previously conveyed by a deed, section 469–A does not apply in the instant case.

The entry is:

Judgment vacated. Remanded to the District Court for entry of a summary judgment in favor of the Mainses.