2009 ME 25

**Glen A. FOURNIER et al.**

v.

**Charles H. ELLIOTT III et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 13, 2009.
Decided: March 10, 2009.

Robert S. Hark, Esq. (orally), Troubh Heisler, Portland, ME, for Glen A. Fournier and Lisa M. Fournier.

David A. King, Esq. (orally), Bath, ME, for Charles H. Elliott, III, Bernadette A. Elliott, and Charles H. Elliott, IV.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

LEVY, J.

[¶ 1]   Glen A. and Lisa Fournier appeal from a summary judgment entered in the District Court (Augusta, *J.D.Kennedy, J.*) denying their claim of title to a portion of the subdivision roads abutting their property. The Fourniers contend that the court erred by concluding that 33 M.R.S. § 460 (2008) does not grant them title to the centerline of the abutting roads. Because we agree, we vacate the judgment and remand for entry of judgment in favor of the Fourniers.

## I.   BACKGROUND

[¶ 2]   This case involves a title dispute over two roads, Lakeland Drive and Johnson Way, which abut a parcel of property in the Lakeland Shores Subdivision in West Gardiner. Lakeland Shores Subdivision was created in 1994 by Lakeland Associates Partnership (Lakeland), which recorded the subdivision plan in the Kennebec County Registry of Deeds in June 1994. Glen and Lisa Fournier purchased two lots in the subdivision, Lots 3 and 3A, from Lakeland in April 1996. Lot 3 is a triangular-shaped piece of land that is abutted on two sides by Lakeland Drive and Johnson Way. The other side of Lot 3 abuts Lot 2, not relevant here. Lot 3A is located across and separated from Lot 3 by Johnson Way.

[¶ 3]   In the Fourniers' deed, Lakeland did not reserve title to Lakeland Drive or Johnson Way. The record does not establish whether Lakeland Drive and Johnson Way were constructed when the Fourniers purchased their property. Both roads are presently constructed and in use, although neither has been accepted by the Town of West Gardiner.

[¶ 4]   In November 2000, Lakeland transferred all of its interest in the subdivision, including title to Lakeland Drive and Johnson Way to the extent Lakeland still held that title, to Charles Elliott III and Bernadette Elliott.[1] Lakeland subsequently dissolved. In September 2003, the Elliotts conveyed Lots 1 and 1A to their son, Charles Elliott IV.

---

1. The November 2000 deed was a corrective deed intended to correct a description of one of the parcels conveyed in an earlier deed, dated September 2000.

[¶ 5] On April 10, 2007, the Fourniers filed a complaint for declaratory judgment against the Elliotts seeking to establish their title to the centerline of the portions of Lakeland Drive and Johnson Way that abut the Fournier's property. The Fourniers claimed that they held title to the centerline of both roads pursuant to 33 M.R.S. §§ 460, 465 (2008). The Elliotts filed an answer and counterclaim for declaratory judgment, alleging that they held title to the roads pursuant to 23 M.R.S. § 3031 (2008).

[¶ 6] The Fourniers moved for summary judgment and argued that, pursuant to section 465,[2] they were deemed to hold title to the centerline of the roads abutting their property because Lakeland failed to reserve title to the roads under any of the listed exceptions in the statute. The Fourniers argued that the only applicable exception by which Lakeland could have reserved title was section 460,[3] because the other exceptions listed in section 465 pertain to conveyances before October 3, 1973, or affect state and municipal roads that are not relevant to this case. The Fourniers asserted that because Lakeland made no reservation of title under section 460, they held title to the centerlines of the roads, subject only to certain public and private rights under section 3031.

[¶ 7] The Elliotts responded that section 3031[4] governs title to proposed, unac-

2. Title 33 M.R.S. § 465 (2008) provides:

Any person owning land in this State abutting a town or private way, county road or highway, whose predecessors in title have not reserved any title in such road or way as provided in sections 460 and 461, or filed the notice provided in section 462 within the time specified therein, shall be deemed to own to the centerline of such road or way except as provided in sections 466 to 469.

3. Title 33 M.R.S. § 460 (2008) provides:

A conveyance of land which abuts a town or private way, county road, highway or proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds shall be deemed to convey all of the grantor's interest in the portion of the road or way which abuts the land, except:

1. **Proposed, unaccepted ways.** With respect to a proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds, those rights provided to owners of other lots in the subdivision by Title 23, section 3031; and

2. **All roads and ways.** With respect to a town or private way, county road or highway, an easement of access necessary to provide ingress and egress to property adjoining the town or private way, county road or highway which shall be preserved, unless the grantor expressly reserves his title to the road or way by a specific reference to the road or way contained in the conveyance.

4. Title 23 M.R.S. § 3031 (2008) provides:

1. **Public rights.** From the date of recording of a subdivision plan in the registry of deeds, the public acquires rights of incipient dedication to public use of the ways laid out on the plan. If a proposed way laid out in the plan is not accepted by the municipality within 20 years from the date of recording of the plan, the public rights in that way terminate.

2. **Private rights.** A person acquiring title to land shown on a subdivision plan recorded in the registry of deeds acquires a private right-of-way over the ways laid out in the plan. If a proposed, unaccepted way is not constructed within 20 years from the date of recording of the plan, and if the private rights created by the recording of the plan are not constructed and utilized as private rights within that 20-year period, the private rights-of-way in that way terminate.

Unless title has been reserved pursuant to Title 33, section 469–A, when the private rights established by this subsection are terminated as provided in this subsection or by order of vacation by the municipality, the title of the fee interest in the proposed, unaccepted way for which the private rights-of-way have terminated passes to the abutting property owners to the centerline of the way.

. . . .

4. **Fee interest reserved by owner of subdivision.** If the owner of land for which

cepted ways within a subdivision. The Elliotts asserted that, pursuant to section 3031(2), the only method by which a landowner in a subdivision may gain title to abutting roads is through the termination of private rights of way, which may be terminated only if a "proposed, unaccepted way" is not constructed within twenty years. Because both Lakeland Drive and Johnson Way had been constructed, the Elliotts argued that the private rights of way created by section 3031 would never terminate and therefore title to the roads could not pass to the Fourniers.

[¶ 8] The court granted summary judgment in favor of the Elliotts and concluded that Charles and Bernadette Elliott held title to both Lakeland Drive and Johnson Way. The court found section 460 inapplicable to the Fourniers' claims for two reasons. First, the court determined that section 460(1) applied only to "proposed, unaccepted ways," and, because Lakeland Drive and Johnson Way had been built, concluded they were no longer "proposed, unaccepted ways" for the purposes of section 460(1). Second, the court found that section 460(2) was inapplicable because that section deals with preserving easements and neither party had claimed title under section 460(2).

[¶ 9] Turning to section 3031, the court found it inapplicable to both the Fourniers' and the Elliotts' claims. On one hand, the court found that it "would be stretching" the language of section 3031(2) to conclude, as the Elliotts urged, that an owner in a subdivision may obtain title to abutting roads only by waiting twenty years for the private rights of way to expire. On the other hand, the court found that Lakeland's failure to reserve title under section 3031(4), which states that an owner of a

a subdivision is proposed reserves the fee interest in any ways proposed on the subdivision plan, the owner shall place a state-

subdivision who intends to reserve title to subdivision roads must place a statement of that intent in all conveyances, did not automatically give title to the Fourniers.

[¶ 10] Finding that the Fourniers had no definitive rights based in either sections 460 or 3031, the court determined that the Fourniers' claims depended on the statutory presumption in section 465. The court, however, relying on our decision in *Watts v. Watts*, 2003 ME 36, 818 A.2d 1031, determined that section 465 does not apply to subdivision roads. Specifically, the court found that although section 465 codified the "common law presumption that landowners own to the centerline of abutting [roads]," the presumption does not apply to conveyances by reference to a subdivision plan. Having determined that section 465 by itself does not apply to conveyances within a subdivision, and because neither sections 460 nor 3031 provide the Fourniers an independent basis for claiming title to the centerline of Lakeland Drive and Johnson Way, the court concluded that the Fourniers' claim failed as a matter of law and that the Elliotts held title to the roads. The Fourniers subsequently appealed.

## II. DISCUSSION

[¶ 11] We review a summary judgment de novo, viewing the evidence "in the light most favorable to the party against whom judgment has been entered." *Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169, 174 (quotation marks omitted). When construing a statute, "we look first to the plain meaning of the statute, and second, if there is any ambiguity, to extrinsic sources, such as legislative history." *City*

ment of this reservation in all conveyances by him of land in the subdivision.

*of Bangor v. Penobscot County,* 2005 ME 35, ¶ 9, 868 A.2d 177, 180.

[¶ 12] On appeal, the Fourniers argue that the court erred by concluding that section 460 was inapplicable and that their claim of title to Lakeland Drive and Johnson Way rested solely on the statutory presumption found in section 465. The Fourniers contend that Lakeland Drive and Johnson Way are "proposed, unaccepted ways" for purposes of section 460, and that section 465 is inapplicable because, by its terms, it applies only to public ways.[5] The Elliotts argue that section 460 cannot apply because the roads in dispute, having been built, are no longer "proposed, unaccepted ways," and that section 3031(2) is controlling because it governs the circumstances under which title passes to abutting subdivision roads. We agree with the Fourniers.

[¶ 13] Our analysis is in two parts. We first determine the meaning of the term "proposed, unaccepted way" and conclude that Lakeland Drive and Johnson Way qualify as such for purposes of applying section 460, notwithstanding their physical status as constructed roads. We then turn to an analysis of the relationship between sections 460 and 3031 and conclude that they operate cooperatively to clarify title to proposed, unaccepted ways.

A. The Definition of "Proposed, Unaccepted Way"

[¶ 14] The term "proposed, unaccepted way" is not defined under Maine statutory law. The term was introduced in 1987, when the Legislature enacted "An Act to Enhance the Marketability of Titles" (the Act). P.L.1987, ch. 385 (effective Sept. 29, 1987) (codified as subsequently amended at 23 M.R.S. §§ 3027, 3031, 3035 (2008); 33 M.R.S. §§ 460, 469–A (2008)). The purpose of the Act was to clarify title to "old, proposed, unaccepted streets shown on subdivision plans," L.D. 1776, Statement of Fact (113th Legis.1987), and to eliminate "the possibility of ancient claims to proposed, unaccepted, unconstructed ways that are outstanding ... but unclaimed," 23 M.R.S. § 3035.

[¶ 15] The issue here is whether proposed, unaccepted ways cease to be such once they are constructed. The Elliotts argue, and the District Court found, that they do. Relying on our decision in *Driscoll v. Mains,* 2005 ME 52, 870 A.2d 124, the court found that the term "proposed, unaccepted way" is synonymous with the term "paper street." We defined a "paper street" in *Driscoll* as "[a] thoroughfare that appears on plats, subdivision maps, and other publicly filed documents, but that has not been completed or opened for public use." *Id.* ¶ 1 n. 2, 870 A.2d at 125 (quoting Black's Law Dictionary 1136 (7th ed.1999)). In *Driscoll,* we noted that paper streets are referred to as "proposed, unaccepted ways" under Maine statutory law. *Id.*

[¶ 16] Our decision in *Driscoll,* however, did not attempt to define the term "proposed, unaccepted way." *Driscoll* provided a definition for paper streets and stated that they fell within the purview of proposed, unaccepted ways. By providing a definition for paper streets, *Driscoll* did not simultaneously define "proposed, unaccepted way" as limited to unconstructed roads appearing on subdivision plans. In fact, the statutory scheme envisions that proposed, unaccepted ways include not only paper streets, but encompass both

---

5. On appeal, the Fourniers do not renew their argument, asserted at trial, that they are deemed to own to the centerline of Lakeland Drive and Johnson Way pursuant to section 465. Because the Fourniers claim title only to the centerline of the disputed roads pursuant to section 460, we do not decide whether section 465 applies to their claim.

constructed and unconstructed roads. As the term appears in the statutes, a "proposed, unaccepted way" is one that is "laid out on a subdivision plan recorded in the registry of deeds." *See* 33 M.R.S. §§ 460, 469–A. From this description, the meaning of a proposed, unaccepted way is not conditioned on its physical state. Rather, the meaning of a proposed, unaccepted way is conditioned on whether it appears on a subdivision plan recorded in the registry of deeds.

[¶ 17] Other statutory sections also suggest that a proposed, unaccepted way may be either constructed or unconstructed. Section 3035 states that the purpose of the Act is to eliminate "the possibility of ancient claims to proposed, unaccepted, *unconstructed* ways that are outstanding ... but unclaimed." 23 M.R.S. § 3035 (emphasis added). Section 3035 therefore suggests that the Act was directed at a particular kind of proposed, unaccepted way: those proposed, unaccepted ways that remained *unconstructed* and unclaimed. Section 3031(2) effectuates, in part, the legislative purpose embodied in section 3035 by providing that private rights-of-way in proposed, unaccepted ways terminate if the way "*is not constructed* within 20 years from the date of recording of the plan." 23 M.R.S. § 3031(2) (emphasis added). Public rights in proposed, unaccepted ways terminate if the municipality does not accept the way within the same period of time. 23 M.R.S. § 3031(1).

[¶ 18] Section 3031(3) further supports the conclusion that the definition of a pro-posed, unaccepted way does not hinge on whether the way has been constructed. Under section 3031(3), a municipality or developer may shorten the "duration for the public and private rights established in [sections 3031(1) and 3031(2) ]." 23 M.R.S. § 3031(3). The implication of section 3031(3) is that the words "proposed" and "unaccepted" relate to whether a municipality has "accepted" the roads "proposed" to it in a subdivision plan. Thus, section 3031(3) implies that the term "proposed, unaccepted way" is indicative of the status of a subdivision road as it pertains to its potential adoption by a municipality, not as it pertains to its physical construction.

[¶ 19] Finally, the statutory scheme forecloses the possibility that a proposed, unaccepted way, once built, becomes a road or way having a different designation. In addition to proposed, unaccepted ways, section 460 affects conveyances of land abutting a "town or private way, county road, [or] highway." 33 M.R.S. § 460. The distinguishing characteristic of these latter roads is their authorization as a public way by a governmental entity, not their status as constructed or unconstructed roads. For example, a "town way" is defined as "[a]n area or strip of land designated and held by a municipality for the passage and use of the general public by motor vehicle." 23 M.R.S. § 3021(3)(A) (2008). A "private way" is defined as a "public easement," which is "an easement held by a municipality for purposes of public access to land or water not otherwise connected to a public way." 23 M.R.S. § 3021(2) (2008).[6] County roads

---

6. Title 23 M.R.S. § 3021(2) (2008) provides:

    **2. Public easement.** "Public easement" means an easement held by a municipality for purposes of public access to land or water not otherwise connected to a public way, and includes all rights enjoyed by the public with respect to private ways created by statute prior to the effective date of this Act. Private ways created pursuant to sections 3001 and 3004 prior to the effective date of this Act are public easements.

    Pursuant to former 23 M.R.S.A. § 3001 (1964), municipalities could "lay out, alter or widen town ways and private ways for any inhabitant or for owners of cultivated land therein." The public had the same rights in

and highways are roads established by a county or the state. *See* 23 M.R.S.A. §§ 651, 2051 (1992);[7] *see also* 1 M.R.S. § 72(6) (2008) (defining "highway" as including "a county bridge, county road or county way"). A proposed, unaccepted way, however, remains such until it is accepted by a municipality.

[¶ 20] For the foregoing reasons, we construe the term "proposed, unaccepted way" as employed in section 460 to mean roads, constructed or unconstructed, that are depicted on a subdivision plan recorded in the registry of deeds and that are proposed to a municipality for acceptance but not yet accepted by the municipality. Because Lakeland Drive and Johnson Way are depicted on a subdivision plan recorded in the Kennebec County Registry of Deeds and are proposed to the Town of West Gardiner for acceptance, but have not yet been accepted, we conclude that they are "proposed, unaccepted ways" as that term is used in section 460.

B. The Relationship Between 23 M.R.S. § 3031 and 33 M.R.S. § 460

[¶ 21] The Elliotts argue that section 3031(2) must be given "precedence" over section 460 because it provides the specific circumstances under which title to proposed, unaccepted ways passes to abutters. As noted above, however, section 3031 was enacted, and section 460 was amended, in 1987 as part of the Act in order to eliminate "the possibility of ancient claims to proposed, unaccepted, unconstructed ways." *See* 23 M.R.S. § 3035; *see* P.L.1987, ch. 385. The inclusion of both sections 460 and 3031 in the Act establishes that the sections are complementary, rather than exclusionary. Read together, sections 460 and 3031 are, in fact, complementary, and they implement the Legislature's intent to eliminate the possibility of ancient claims to proposed, unaccepted ways.

[¶ 22] With regard to proposed, unaccepted ways, section 460 provides that a conveyance of land abutting such way "shall be deemed to convey all of the grantor's interest in the portion of the road or way which abuts the land." 33 M.R.S. § 460. Section 460(1), however, excepts from this presumption certain public and private rights that are preserved under section 3031.

[¶ 23] Section 3031 provides that, when a subdivision is recorded, the public acquires rights of incipient dedication to public use of the ways in the subdivision, and a person acquiring land within the subdivision acquires a private right-of-way over the ways in the subdivision. 23 M.R.S. § 3031(1), (2). The public rights expire if the municipality does not accept the pro-

---

private ways as it had in the public highway system. *Franklin Prop. Trust v. Foresite, Inc.*, 438 A.2d 218, 222 (Me.1981). Private ways were designated as such to distinguish them from town ways, "the cost of which [were] met entirely from public funds." *Id.* (quotation marks omitted). With the enactment of section 3021(2), section 3001 was repealed and the term "private way" was changed to "public easement." P.L.1975, ch. 711, §§ 7, 8 (effective July 29, 1976) (codified at 23 M.R.S. § 3021(2)). The change in terminology was made to dispel confusion surrounding the term "private way" and to define it "to mean 'public easement' consistent with court

interpretations." *Franklin Prop. Trust*, 438 A.2d at 224 (citations and quotation marks omitted).

**7.** Title 23 M.R.S.A. § 651 (1992) has been amended since 1996, when the Fourniers purchased their property. *See, e.g.,* P.L.2003, ch. 119, §§ 1, 2 (effective Sept. 13, 2003) (codified at 23 M.R.S. § 651 (2008)). Title 23 M.R.S.A. § 2051 (1992) was repealed and replaced by P.L.1997, ch. 327, § 1 (effective Sept. 19, 1997) (codified at 23 M.R.S. § 2051 (2008)). In each case, the relevant language remains unchanged.

posed, unaccepted ways within twenty years from the date of the recording of the subdivision, and the private rights expire if the proposed, unaccepted ways are not built within the same period. *Id.* Thus, in this case, because Lakeland Drive and Johnson Way have been constructed, the private rights-of-way over the roads have not expired, and the public rights of incipient dedication will expire only if the Town of West Gardiner does not accept the roads by June 2014.

[¶ 24] The second paragraph of section 3031(2) further provides that if a private right-of-way expires, title to the way passes to the abutting landowner to the centerline of the way, but only if the developer failed to reserve title pursuant to 33 M.R.S. § 469–A. Section 469–A, however, pertains to conveyances prior to 1987, which is the year section 469–A was enacted as part of the Act. Consequently, the second paragraph of section 3031(2) does not apply to the conveyance to the Fourniers.

[¶ 25] Section 3031(4), however, applies to subdivisions recorded after 1987 and provides that an owner must expressly reserve title in proposed, unaccepted ways when conveying land in a subdivision. Read in conjunction with section 460(1), section 3031(4) provides a developer the right to retain title to proposed, unaccepted ways within a subdivision, but if the developer fails to specifically reserve title by "plac[ing] a statement of this reservation in all conveyances," then the developer "shall be deemed to convey all of [his or her] interest in the portion of the road or way which abuts the land [conveyed]." 23 M.R.S. § 3031(4); 33 M.R.S. § 460.

[¶ 26] With the foregoing assessment of the complementary relationship between sections 460 and 3031, the resolution of this case becomes more clear. Pursuant to section 460, because Lakeland did not reserve title to the portions of Lakeland Drive and Johnson Way that abut the Fourniers' property, the Fourniers, who claim title to the centerline of those roads, are deemed to own Lakeland's interest in those portions of the roads up to the centerline. Their title, however, is subject to the public and private rights established by section 3031. Thus, pursuant to section 3031(1), the public retains rights of incipient dedication to public use of the roads until June 2014, unless the Town of West Gardiner accepts the roads. Pursuant to section 3031(2), the Elliotts, and others owning lots in the subdivision, have a private right-of-way over the roads in perpetuity.

The entry is:

Judgment vacated. Remanded for entry of judgment in accordance with this opinion.