MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2017 ME 15
Docket:       Oxf-16-82
Argued:       November 9, 2016
Decided:      January 19, 2017
Corrected:    June 29, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

GLORIA CARIGNAN

v.

PAUL R. DUMAS JR.

JABAR, J.

[¶1]  Paul R. Dumas Jr. appeals from a judgment of the Superior Court (Oxford County, *Clifford, J.*) granting summary judgment in favor of Gloria Carignan and denying Dumas's motion for summary judgment.  Dumas contends that the court erred by interpreting a provision of the Paper Streets Act, 23 M.R.S. § 3031 (2016), to apply retrospectively.  We agree, and therefore vacate the court's entry of summary judgment for Carignan and its denial of summary judgment for Dumas, and remand for further proceedings.

I.  BACKGROUND

[¶2] The summary judgment record contains the following facts. *Brady v. Cumberland Cty.*, 2015 ME 143, ¶ 2, 126 A.3d 1145.  Gloria Carignan owns unencumbered title to real estate located at 3 Holyoke Avenue in Rumford,

Maine (the "Carignan Parcel").  Her property is described in a deed from John F. Hargreaves to Gloria F. Hargreaves dated September 15, 2010, and recorded in the Oxford County Registry of Deeds.  The Carignan Parcel is further described in a deed to John F Hargreaves and Gloria F. Hargreaves by Robert F. Perry and Rita N. Perry dated January 26, 1979, also recorded in the Oxford County Registry of Deeds.  The Carignan Parcel was originally granted to the Perrys by deed of Rumford Falls Power Company (RFPC) recorded on February 23, 1973.  It is delineated as lots 2153 through 2159 on RFPC's subdivision plan titled Ninth Addition and Revision of Part First Addition Rumford (the "Ninth Addition Plan"), dated July 8, 1920, and recorded on August 4, 1920.

[¶3]  Paul R. Dumas Jr. owns property described in two separate deeds: one (the "Casco Bank Parcel") dated January 22, 1976, and recorded in the Oxford County Registry of Deeds; and another (the "Rumford Paper Company Parcel") dated July 18, 2014, also recorded in Oxford County.  The Rumford Paper Company Parcel is delineated on the Ninth Addition Plan, and is contiguous to the Casco Bank Parcel, which is delineated on a subdivision plan titled Fourth Addition to Rumford Falls, dated August 10, 1906, and recorded September 19, 1906.  Together, Dumas's property (collectively the "Dumas

3

Parcel") includes plots 2160 through 2176 and the southern portion of 2177 as shown on the Ninth Addition Plan.



[¶4] The Carignan Parcel is bordered on the west by Willow Street, a paper street depicted on the Ninth Addition Plan. Dumas's lots 2172 through 2177 are bordered by Willow Street on the east, and his lots 2160 through 2164 are bordered by Willow Street on the west. A portion of Willow Street runs

directly between part of the Carignan Parcel and part of the Dumas Parcel. Two other paper streets, Vine Street and Salem Street, abut the Dumas Parcel but are not at issue here.

[¶5] Willow Street was never formally accepted by the Town of Rumford, and neither party alleges any private or public use of the road until the 1970s, when Dumas asserts that a portion of Willow Street was maintained for logging purposes.[1]

[¶6] Rumford Paper Company is the successor-in-interest to RFPC. In conveying the Carignan Parcel to the Perrys in 1973, RFPC expressly reserved

> [f]orever, to and for itself, its successors and assigns . . . rights to authorize and consent to the authorization, construction, and maintenance through any and all the streets, avenues, parks, reserved and other open places shown on the [Ninth Addition Plan], of surface railways to be propelled by horses, electricity or steam; or other power, or sewers, water pipes, gas pipes, electric

---

[1] Carignan denied Dumas's statement of material fact that the road was used for logging during the 1970s and 1980s, and asserted that the affidavits of Rachel Meisner and Brian Milligan, submitted in support of Dumas's statements of material facts, "failed to set out qualifying foundation." While a conclusory and unsupported assertion of personal knowledge in an affidavit is insufficient to establish the admissibility of business records pursuant to M.R. Civ. P. 56(e), *see Beneficial Me. Inc. v. Carter*, 2011 ME 77, ¶¶ 15-16, 25 A.3d 96, firsthand personal knowledge of the fact asserted satisfies the requirements of the rule, *Cote v. Cote*, 2016 ME 94, ¶ 20, 143 A.3d 117. Because both Meisner and Milligan asserted firsthand knowledge of the use of Willow Street during the 1970s and 1980s based on personal experience and observation, and Carignan disputes only the evidentiary foundation for their affidavits, their affidavits and the facts contained therein are properly considered as part of the summary judgment record here.

Dumas, by contrast, admitted Carignan's statement of material fact that "[a]t no time was there use or construction of the easterly side of Willow Street at any time meaningful to this cause of action."

wires, both overhead and underground, and all other matters and things for which streets are customarily used . . . .

When Rumford Paper Company conveyed the Rumford Paper Company Parcel to Dumas, it expressly included in its conveyance "all of the fee interest, and any other interest or rights of the Grantor previously reserved or otherwise held by Rumford Falls Power Company in Willow Street . . . as shown upon [the Ninth Addition Plan]."

[¶7]  On May 15, 1997, the Town voted pursuant to 23 M.R.S.A. § 3032 (1997) to exempt from the time limitations of the Paper Streets Act certain paper streets in Rumford, but did not include Willow Street.  Less than twenty years before this action was brought, Carignan constructed a garage that encroaches upon a section of Willow Street adjacent to the Carignan Parcel.  She has never recorded in the Oxford County Registry of Deeds, and never given to any record owner, any notice of claim to Willow Street.

[¶8]  On November 8, 2013, Carignan filed a complaint against Dumas and Robert Richard, an alleged contractor for Dumas, asserting six causes of action related to Richard's use of Willow Street to access the Dumas Parcel.  In response, Dumas asserted affirmative defenses and counterclaimed, pursuant to the Paper Streets Act, P.L. 1987, ch. 385 (effective September 29, 1987) (codified at 23 M.R.S. §§ 3027, 3031-3035 (2016); 33 M.R.S. §§ 460,

469-A (2016)) seeking a declaratory judgment that Carignan has no legal rights to any portion of Willow Street, that Dumas has an easement to use Willow Street to access his property, and that a public easement exists over Willow Street.

[¶9]  Carignan stipulated to a partial dismissal of her claim, and amended her complaint to seek declaratory judgment, naming Dumas, RFPC, and New Page Corporation as defendants.  RFPC and New Page Corporation were later dismissed from the action, leaving only Carignan and Dumas as parties.  In January 2015, Carignan and Dumas filed cross-motions for summary judgment as to Carignan's claim and Dumas's counterclaim for declaratory judgment.

[¶10]  On May 4, 2015, following a hearing on the cross-motions, the Superior Court (Oxford County, *Clifford, J.*) entered an order granting summary judgment for Carignan and denying summary judgment for Dumas.  The court concluded that pursuant to 33 M.R.S. § 469-A (2016), addressing reservation of title to proposed, unaccepted ways, Carignan, through her predecessors-in-title, acquired title to the centerline of that portion of Willow Street abutting her property.  Next, addressing the issue of public and private easements in Willow Street, the court relied upon our holding in *Tisdale v. Buch*, 2013 ME 95, 81 A.3d 377, to conclude that 23 M.R.S. §§ 3031(1) and (2) (2016),

which address public and private rights in proposed, unaccepted ways recorded in subdivision plans, apply to subdivision plans recorded before September 29, 1987. The court found that because the Town never accepted Willow Street, any public or private rights to its use expired no later than 1940 pursuant to those provisions. Additionally, the court concluded that Carignan was not required to file notice of her rights to Willow Street pursuant to 23 M.R.S. § 3033 (2016) because public rights to the street had already terminated. Finally, the court denied Dumas's nuisance counterclaims because he had failed to allege properly supported material facts that he has rights in Willow Street that are burdened by Carignan's encroaching garage.

[¶11] Dumas filed a motion for reconsideration on May 18, 2015, which the court denied on July 29, 2015, and was entered on the docket on February 12, 2016. On February 24, 2016, Dumas timely filed notice of appeal. M.R. App. P. 2(b)(3).

## II. DISCUSSION

### A. Issue on Appeal

[¶12] Dumas argues on appeal that when read together with 23 M.R.S. § 3032 (2016),[2] 23 M.R.S § 3031 (2016)[3] cannot reasonably be applied to subdivision plans recorded prior to September 29, 1987, because section 3031

---

[2] Title 23 M.R.S. § 3032 provides, in part:

1-A. Deemed vacation. A proposed, unaccepted way or portion of a proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds prior to September 29, 1987 is deemed to have been subject to an order of vacation under section 3027 if, by the later of 15 years after the date of the recording of the subdivision plan laying out the way or portion of the way or September 29, 1997, both of the following conditions have been met:

A. The way or portion of the way has not been constructed or used as a way; and

B. The way or portion of the way has not been accepted as a town, county or state way or highway or as a public, utility or recreational easement.

[3] Title 23 M.R.S. § 3031 provides, in part:

1. Public rights. From the date of recording of a subdivision plan in the registry of deeds, the public acquires rights of incipient dedication to public use of the ways laid out on the plan. If a proposed way laid out in the plan is not accepted by the municipality within 20 years from the date of recording of the plan, the public rights in that way terminate.

2. Private rights. A person acquiring title to land shown on a subdivision plan recorded in the registry of deeds acquires a private right-of-way over the ways laid out in the plan. If a proposed, unaccepted way is not constructed within 20 years from the date of recording of the plan, and if the private rights created by the recording of the plan are not constructed and utilized as private rights within that 20-year period, the private rights-of way in that way terminate.

Unless title has been reserved pursuant to Title 33, section 469-A, when the private rights established by this subsection are terminated as provided in this subsection or by order of vacation by the municipality, the title of the fee interest in the proposed, unaccepted way for which the private rights-of-way have terminated passes to the abutting property owners to the centerline of the way.

9

cannot be applied to the same paper streets to which section 3032 expressly applies.[4] According to Dumas, applying section 3031 to pre-1987 subdivision plans causes the nonsensical result that in certain instances public and private rights in proposed, unaccepted ways will be simultaneously preserved pursuant to sections 3032 and 3033 and terminated pursuant to section 3031.[5] Carignan counter-argues that section 3031 can be reconciled with sections 3032 and 3033 because section 3031 governs public and private rights of use, while sections 3032 and 3033 govern presumptions, procedures, and remedies.

B.      Standard of Review

[¶13]    Cross-motions for summary judgment are reviewed de novo pursuant to M.R. Civ. P. 56. *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646. We will "consider both the evidence and any reasonable inferences that the evidence produces in the light most favorable to the party against whom the summary judgment has been granted in order to determine if there

---

[4] Dumas concedes that pursuant to 33 M.R.S. § 469-A (2016) Carignan is the owner in fee to the centerline of the portion of Willow Street that abuts her lot. He argues only that the court erred in its application of section 3031 to plans recorded prior to September 29, 1987, and that his right of way over Willow Street should therefore not have terminated.

[5] Although Dumas raises other issues on appeal, because we determine that the court's analysis and application of sections 3031 and 3032 of the Paper Streets Act was reversible error, as was the court's conclusion that Dumas had abandoned any easement to which he might be entitled, we do not address Dumas's other contentions here.

is a genuine issue of material fact." *Grant v. Foster Wheeler, LLC*, 2016 ME 85, ¶ 12, 140 A.3d 1242 (quotation marks omitted). Summary judgment is properly granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Doe v. Williams*, 2013 ME 24, ¶ 10, 61 A.3d 718; M.R. Civ. P. 56(c).

[¶14] We review de novo "the trial court's interpretation and application of the relevant statutes and legal concepts." *Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶ 19, 116 A.3d 466. We will analyze a statute's plain language to effect the Legislature's intent, and will "consider the provision at issue in the context of the entire relevant statutory scheme." *Brooks v. Carson*, 2012 ME 97, ¶ 19, 48 A.3d 224.

C.    Operation of the Paper Streets Act

[¶15] The Paper Streets Act was enacted in 1987 to "clarify title to old, proposed, unaccepted streets shown on subdivision plans, and to eliminate the possibility of ancient claims." *Id.* ¶ 24 (citation and quotation marks omitted). The various sections of the Act must be read as complementary, *Fournier v. Elliott*, 2009 ME 25, ¶ 21, 966 A.2d 410, and sections 3031 through 3034 "shall be liberally construed to affect the legislative purpose of" the Act. 23 M.R.S. § 3035 (2016).

11

[¶16]  Section 3031 of the Act grants the public rights of incipient dedication to ways laid out in a recorded subdivision plan, but terminates those rights if the proposed way is not accepted by the municipality within twenty years from the date of recording.  23 M.R.S. § 3031(1).  It also grants a private right of way over those ways to parties who acquire title to land shown on the same subdivision plan as the proposed way, and terminates those private rights if the way is not constructed within twenty years after recording and the private rights "are not constructed and utilized" within the same time.  *Id.* § 3031(2).

[¶17] Section 3032 provides that if, within the later of fifteen years after recording or September 29, 1997, a municipality has not voted to accept a proposed way laid out in a subdivision plan recorded prior to September 29, 1987, and it has been neither constructed nor used as a way, then the way is deemed vacated as though by order of the municipality pursuant to 23 M.R.S. § 3027 (2016).  23 M.R.S. § 3032(1-A).  A municipality may extend the deadline by filing notice.  *Id.* § 3032(2).  Any person "claiming to own a proposed, unaccepted way . . . deemed vacated under section 3032" must record notice and bring a claim pursuant to section 3033.  23 M.R.S. § 3033 (2016).

D.     Retroactive Application of Section 3031

[¶18]   At issue here is whether section 3031 applies to pre-1987 subdivision plans.  Our common law presumption is that "absent language to the contrary, legislation affecting procedural or remedial rights should be applied retroactively, whereas legislation affecting substantive rights should be applied prospectively."  *In re Guardianship of Jeremiah T.*, 2009 ME 74, ¶ 18, 976 A.2d 955 (quotation marks omitted); *see also Greenvall v. Me. Mut. Fire Ins. Co.*, 2001 ME 180, ¶ 7, 788 A.2d 165.  Similarly, we have said that "all statutes will be considered to have a prospective operation only, unless the legislative intent to the contrary is clearly expressed or necessarily implied from the language used."  *Coates v. Me. Emp't Sec. Com.*, 406 A.2d 94, 97 (Me. 1979) (quotation marks omitted); *see also* 1 M.R.S. § 302 (2016) ("Actions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby.").  Therefore, unless the plain language of the statute, or some other reason, requires it, we will not interpret section 3031 to apply retroactively.

[¶19]  We have noted, discussing the Act as a whole, that it was "intended to apply retroactively."  *Glidden v. Belden*, 684 A.2d 1306, 1314 (Me. 1996) (noting that "the law was intended as a 'comprehensive attempt to deal with a

variety of title and title marketability problems presented by old, proposed, unaccepted streets shown on subdivision plans'" (citing L.D. 1776, Statement of Fact (113th Legis. 1987))). By its plain language, section 3032 applies retroactively to proposed, unaccepted ways "laid out on a subdivision plan recorded in the registry of deeds prior to September 29, 1987." 23 M.R.S. § 3032(1-A). Similarly, the second paragraph of subsection 3031(2) applies retroactively, because that paragraph references section 469-A, which "pertains to conveyances prior to 1987." *Fournier*, 2009 ME 25, ¶ 24, 966 A.2d 410; 23 M.R.S. § 469-A(1).

[¶20] There are, however, certain provisions of the Paper Streets Act that we have held do not apply retroactively. For example, we have stated that subsection 3031(4) applies only to subdivisions recorded after 1987, and have never explicitly applied subsection 3031(1) or the first paragraph of subsection 3031(2) to pre-1987 subdivisions. *Id.* ¶¶ 2, 25-26.

[¶21] The court below relied upon our decision in *Tisdale* to conclude that section 3031 as a whole applies to pre-1987 subdivision plans. In *Tisdale*, we decided that plaintiffs who sought a declaratory judgment as to their rights to use a right of way could not have acquired rights pursuant to subsection 3031(2) because their lots were not shown on a 1969 subdivision plan that

depicted the right of way, and their deeds did not reference the 1969 plan. *Tisdale*, 2013 ME 95, ¶¶ 7, 12, 81 A.3d 377.  Thus, rather than affirmatively holding that section 3031 applies in its entirety to such subdivision plans, we determined that the plan at issue in that case did not meet the requirements of subsection 3031(2).  *Id.*

[¶22]  If we now were to apply subsection 3031(1) and the entirety of subsection 3031(2) to pre-1987 subdivision plans, as Carignan urges, sections 3031 and 3032 would be in conflict.  Section 3032 terminates public rights in proposed, unaccepted ways if those rights are not utilized *and* the ways are not accepted by the town within fifteen years after the date of recording or by September 29, 1997, whichever comes later.  23 M.R.S. § 3032(1-A)(B); *see Glidden*, 684 A.2d at 1315 (stating that "unless the affected municipality accepts and constructs the way or files a notice under section 3032(2) . . . any incipient rights in the way terminate"); *see also Lamson v. Cote*, 2001 ME 109, ¶ 19 n.10, 775 A.2d 1134 (citing *Glidden*, 684 A.2d at 1315)).  Subsection 3031(1), on the other hand, creates a public right of incipient dedication, and terminates that public right if the way is not accepted within *twenty years* after recording. 23 M.R.S. § 3031(1).

[¶23]  Concurrent application of these two provisions would lead to an absurd result.  For any proposed, unaccepted way laid out on a subdivision plan recorded prior to September 29, 1987, one of three public rights termination dates would apply: the later of September 29, 1987, or fifteen years from recording; or twenty years from recording.  If, for example, a subdivision plan recorded in 1960 contained a proposed way, then section 3031 would terminate incipient public rights in 1980, but section 3032 would not terminate public rights until September 29, 1997.

[¶24]  We therefore hold that subsection 3031(1) of the Paper Streets Act does not retroactively apply to proposed, unaccepted ways laid out on subdivision plans recorded prior to September 29, 1987.  This holding comports with our jurisprudence concerning statutory interpretation as well as the overall purpose of the Paper Streets Act.  The Act is intended to be read broadly to clarify title to old, proposed, unaccepted streets, and prospective application of subsection 3031(1) serves that purpose.  Public rights to proposed, unaccepted ways recorded prior to September 29, 1987, are clarified by operation of section 3032 within the limitations period established by that section.  Public rights to proposed, unaccepted ways recorded on or after September 29, 1987, are clarified by operation of subsection 3031.  Private

rights to proposed, unaccepted ways are clarified by operation of subsection 3031(2), as well as the procedure established in section 3033.

[¶25]  By reading subsection 3031(1) to apply only prospectively, the various provisions of the Paper Streets Act are brought into harmony.  Any interpretation that would apply subsection 3031(1) to apply retroactively would yield absurd results.

E.    Public Rights to Willow Street

[¶26]  Because the lower court erred in its application of subsection 3031(1) to pre-1987 subdivision plans, its conclusion that the incipient public rights to Willow Street expired by 1940 was error.  Willow Street was recorded prior to September 29, 1987, and therefore the public rights to the way were subject to section 3032.  It is undisputed that Willow Street has never been accepted as a way by the town of Rumford.  Pursuant to section 3032 it is therefore considered vacated as of September 29, 1997, if it was not "constructed or used as a way."  23 M.R.S. § 3032(1-A)(A).  The issue therefore becomes a factual one that hinges on whether Willow Street was "constructed or used as a way" so as to prevent its automatic vacation and therefore termination of the public's rights to it pursuant to section 3032.

[¶27] Willow Street was depicted on the Ninth Addition Plan, which was recorded on August 4, 1920. Dumas alleges that by the 1970s there existed a gravel road over Willow Street which was used for foot and vehicle traffic to access the Dumas Parcel for logging purposes. Specifically, Dumas submitted two affidavits with his statement of material facts alleging use of Willow Street during the 1970s and 1980s. The first, an affidavit sworn by Rachel Meisner, alleges that during the 1970s and 1980s, Meisner visited her husband while he worked for Boise Cascade in an area to the south of the Dumas Parcel. According to Meisner, Willow Street was passable by car and on foot, and was "already a constructed way" prior to her husband's work there. A second affidavit, sworn by Brian Milligan, a former forester for Boise Cascade who supervised wood harvesting at the site, states that Willow Street was an existing gravel road at the time he harvested there in the 1970s and 1980s, and that some work was done to repair the gravel and add a culvert in the 1970s. Neither affidavit specifies the years of use, nor alleges any use after the 1980s.

[¶28] Rather than disputing Dumas's allegations of the use of Willow Street in the 1970s and 1980s, Carignan objects only to the *admissibility* of affidavits alleging its use in the 1970s and 1980s. The trial court noted, and we

agree, that the affidavits upon which Dumas relies are admissible. *See supra*, n.1.

[¶29] By contrast, Carignan asserts in her statement of material facts that Willow Street was never developed or improved, which Dumas admits to the extent that Willow Street was not developed or improved by the Town prior to 1940. As we previously noted, Dumas also admitted to Carignan's asserted fact that "[a]t no time was there use or construction of the easterly side of Willow Street at any time meaningful to this cause of action." According to the Ninth Addition Plan, Carignan's parcel abuts the easterly side of Willow Street. While it seems implausible that only one half of Willow Street was ever "constructed or used as a way," because a fact-finder would need to decide between these competing versions of the truth—whether, at what times, and to what extent Willow Street has been used or constructed within the meaning of section 3032—and accepting either Carignan's or Dumas's version of events would yield different results pursuant to the relevant law, there is a genuine issue of material fact, and summary judgment as to the deemed vacation of public rights in Willow Street was improper. *See Angell v. Hallee*, 2014 ME 72, ¶ 17, 92 A.3d 1154.

19

F.      Private Rights to Willow Street

[¶30]   In addition to its conclusion that the public retained no rights in Willow Street, the trial court concluded that Dumas retained no private rights in Willow Street and had acquiesced to the encroachment of Carignan's garage on any easement he might hold over the way, thereby abandoning any hypothetical easement.  This conclusion, however, is supported by neither the parties' statements of material facts nor an application of the law to those facts, for several reasons.

[¶31]   First, subsection 3031(2) terminates private rights only if the "private rights created by the recording of the plan are not constructed and utilized as private rights" within 20 years of recording.  23 M.R.S. § 3031(2).  While we have held that the second paragraph of subsection 3031(2) applies to pre-1987 subdivision plans by reference to title 33 M.R.S. § 469-A, *see Fournier*, 2009 ME 25, ¶ 24, 966 A.2d 410, we have never held that the first paragraph applies to retroactively vest abutting landowners with a right of way over ways laid out in such plans.  Even if subsection 3031(2) did apply retroactively, which we decline to hold at this time, there is a genuine dispute of material fact as to any historical use or construction of Willow Street.

[¶32] Because Carignan alleges that Willow Street was not developed or improved within the required time, which Dumas disputes, there remains a question of fact as to *when* Willow Street might have been privately used. Dumas does *not* dispute Carignan's assertion that the easterly side of Willow Street—the side abutting Carignan's property—has never been used, but asserts in his own statement of facts that Willow Street was used by loggers for access in the 1970s and 1980s. Neither party alleges any private use of Willow Street until the 1970s, and neither party alleges any use at all after the 1980s, with the exception of Carignan's encroaching garage. There is therefore a genuine dispute of material fact as to whether private use was made of Willow Street to preserve Dumas's rights, whether by operation of the Paper Streets Act or by a common law easement.

[¶33] Further, the trial court erred to the extent that it found that Dumas had abandoned any easement to which he might be entitled. In order to find abandonment of an easement, the court would need to find "(1) a history of nonuse coupled with an act or omission evincing a clear intent to abandon, or (2) adverse possession by the servient estate," neither of which is clear from the record. *Laux v. Harrington*, 2012 ME 18, ¶ 21, 38 A.3d 318.

## III. CONCLUSION

[¶34]   Because we agree with Dumas that the court erred in its application of sections 3031 and 3032 of the Paper Streets Act and its finding that Dumas had abandoned any easement to which he might be entitled, we vacate the court's summary judgment in favor of Carignan and remand for further proceedings consistent with this opinion.

The entry is:

> Judgment vacated.  Remanded for proceedings consistent with this opinion.

---

James B. Haddow, Esq. (orally), Petruccelli, Martin & Haddow, LLP, Portland, for appellant Paul R. Dumas, Jr.

Stephean C. Chute, Esq. (orally), South Casco, and Thomas S. Carey, Esq., Carey & Associates, P.A., Rumford, for appellee Gloria Carignan

Oxford County Superior Court docket number RE-2013-66
FOR CLERK REFERENCE ONLY